SAMUEL A. WEST ET AL. v. HOUSTON OIL COMPANY OF TEXAS ET AL.

Decided June 9, 1909.

**1.—Trespass to Try Title—Affidavit of Forgery.**

An affidavit of forgery by a defendant in an action of trespass to try title throws upon the plaintiff the burden of proving as at common law the genuineness of the deed which is attacked by the affidavit.

**2.—Same—Ancient Document—Evidence.**

A document over thirty years old is termed an "ancient document;" such a document is taken as sufficient evidence of genuineness to be submitted to the jury when, (1) it has been in existence for the period of thirty years, but the purported date of the document is not sufficient to prove this fact; (2) when it comes from the proper custody, that is, from some place where it would be natural to find the document if genuine; (3) the document must in appearance be free from suspicion. When these requirements have, in the opinion of the trial judge, been sufficiently met, the document is admissible in evidence. It is not necessary to call the attesting witnesses or otherwise prove the execution of the document.

**3.—Same.**

The question of the genuineness of an ancient document which has been attacked by an affidavit of forgery is one for the jury even after it has been admitted in evidence by the trial judge.

**4.—Same—Forgery—Evidence.**

Upon an issue of forgery of an ancient instrument, evidence considered and held to require the submission of the issue to the jury and sufficient to support a verdict finding that the instrument was a forgery.

**5.—Forgery—Identity of Names.**

One having the same name as another who is the owner of a tract of land, is guilty of forgery when he intentionally attempts to convey it, knowing that he does not own it.

**6.—Improper Argument—Harmless When.**

"Bloody Shirt" argument of counsel considered and condemned, but held harmless in view of the instructions of the trial court to disregard it.

**7.—Misconduct of Jury.**

Since the adoption of the statute permitting inquiry into the conduct of a jury in its deliberation for the purpose of impeaching their verdict, the fact that a jury took with them in their retirement a document excluded as evidence, would not be cause for reversing the judgment in the absence of evidence that the document was read by any of the jurors.

**8.—Verdict—Sufficiency of Evidence—Practice.**

Whether there is any evidence upon an issue is a question for the court to decide, but whether the evidence is sufficient to prove an essential fact is a matter primarily for the jury to decide. The decision of the jury will not be disturbed unless it is manifestly against the clear preponderance of the testimony.

Error from the District Court of Sabine County. Tried below before Hon. W. B. Powell.

*W. D. Gorden, J. A. Templeton, Goodrich & Synnott, Davis & Davis* and *Tom C. Davis,* for plaintiff in error.

*Denman, Franklin & McGown, Lanier & Martin, Taliaferro & Nalle* and *Hamilton & Minton,* for Kirby Lumber Co., defendant in error.

*Geo. E. Holland,* for A. Gilmer's Heirs, defendants in error.

NEILL, ASSOCIATE JUSTICE.—On April 18, 1903, plaintiffs in error, hereinafter called plaintiffs, brought this suit in the ordinary form of an action of trespass to try title against defendants in error, the Houston Oil Company of Texas, the Kirby Lumber Company and A. Gilmer, hereinafter called defendants, to recover the Jesse McGee league survey situated in Sabine and Newton Counties. The defendants answered by pleas of not guilty and the three, five and ten years statutes of limitation. The trial of the case resulted in a verdict and judgment for defendants. This is the second appeal from a judgment in their favor. The opinion in the first is reported in 46 Texas Civ. App., 102, to which reference is made for a more particular statement of the issues involved which were practically the same on that trial as on the one at which the judgment now before us was rendered.

The first assignment complains of the court's submitting in its charge to the jury the issue as to whether Jesse McGee, the original grantee, executed a certain deed purporting upon its face to have been made on January 14, 1840, by him to William Dobson. The second assignment complains of the court's refusal to set aside the verdict and grant plaintiffs a new trial upon the ground that the verdict is without evidence to support it, in that it is insufficient to establish the fact that the deed from Jesse McGee to William Dobson, referred to in the first assignment, was a forgery. An affidavit of forgery of the deed mentioned in the assignments was made by defendants, which threw the burden of proving its genuineness upon the plaintiffs, whose title, as will be shown, depends upon such proof.

The plaintiffs, as well as defendants, deraign title from Jesse McGee, to whom the land was granted by the proper authorities of the State of Coahuila and Texas on October 23, 1835, as a colonist of the colony of the Empresario Lorenzo de Zavalla by George Antonio Nixon,

Commissioner of the State for the issuance of title to such colonists for lands to which they are entitled. The instruments evidencing the grant are in the usual form.

From such common source, the plaintiffs' chain of title is as follows: (1) Warranty deed from Jesse McGee to William Dobson, dated January 14, 1840; (2) warranty deed from William Dobson to David M. Lawrence, dated May 20, 1846; (3) warranty deed from David M. Lawrence to Martin L. Sheldon, dated September 16, 1848; (4) warranty deed from Martin L. Sheldon and wife to Samuel West, dated November 2, 1848; and (5) proof of the death of Samuel West, and that plaintiffs are his only heirs-at-law and that they inherited his estate.

The defendants deraign from the common source as follows: (1) A warranty deed from Jesse McGee and wife, Delinda McGee, to C. P. Huntington to the west half of the league, dated October 17, 1881. The Houston Oil Company, claiming under this deed, exhibited in evidence a consecutive chain of title from C. P. Huntington down to itself; (2) a deed from Jesse McGee and wife to D. J. Henderson, dated March 18, 1887; (3) a deed from Jesse McGee and wife to D. J. Henderson, dated March 22, 1888. The defendant Gilmer, claiming by mesne conveyances under and through these deeds, showed in evidence a consecutive chain of title from Henderson down to himself to the east half of the survey in controversy except 200 acres; and (4) admission of A. Gilmer's death, and that those made parties defendant as his heirs and executors since his death are his heirs and executors.

From this statement of the chain of title from the common source of the respective parties, it is apparent that the plaintiffs' is superior if the deed from McGee to Dobson, referred to in the assignments, is genuine; and that they are entitled to recover unless defendants, or those under whom they claim through the subsequent deeds from McGee, are purchasers for value without notice of his prior conveyance. For unless they were such purchasers, the maxim *qui prior est tempore, potior est jure,* obtains.

The first proposition under these assignments is: "The evidence was insufficient to raise the issue as to whether the deed in question was genuine or was a forgery; and it was error to submit such issue to the jury as a disputed issue of fact."

The opinion of the Court of Civil Appeals of the First District, on the former appeal, which sets out at some length the evidence upon this issue, while refraining from discussing it, holds that it is clearly sufficient to raise the issue of the genuineness of the deed, and that the trial court could not properly have instructed a verdict on such an issue. As the evidence before us seems to be substantially the same as it is recited in that opinion, we might content ourselves with referring to it and holding that the question presented by these assignments was correctly decided against the plaintiffs on the prior appeal. But we deem it due their counsel, who have so ably briefed and earnestly argued the case orally before us, to review the evidence and give expression to the opinion we have ourselves formed independent of any expression upon the question found in the opinion on the prior appeal.

Proof of the execution of the deeds in plaintiffs' title is essential to

their recovery. This, of course, includes the one mentioned in these assignments; for without it plaintiffs can not make out their case. Since an affidavit of forgery was filed by defendants as to such instrument, this proof must be made by evidence as at common law. It will be noticed at once that the instrument upon its face appears to have been executed over thirty years prior to the date of the trial, which would, if executed at the time it bears date, make it what is termed an "ancient document." Such an instrument, under certain conditions, is taken as sufficient evidence of genuineness to be submitted to the jury. The reasons for this rule are: (1) After such a long lapse of time, ordinary testimonial evidence from those who saw the document's execution, or knew the handwriting, or heard the party admit its execution, is practically unavailing, and a necessity always exists for resorting to circumstantial evidence; and (2) the circumstance of age, or long existence of the document, together with its proper custody, its unsuspicious appearance, and perhaps other circumstances, suffice, in combination, as evidence to be submitted to the jury.

The conditions to which such a document is subject in order to authorize its introduction are: (1) It must have been in existence for the period of thirty years; (2) it must have come from the proper custody—that is, from some place where it would be natural to find a genuine document such as the one in question; (3) the document must in appearance be free from suspicion—that is, to use the language of Justice Jackson in Hill v. Nisbet, 58 Ga., 586: "On inspection it must exhibit an honest face; otherwise it is not such an ancient document that its countenance will pass muster;" and (4) in some jurisdictions, possession under the document is regarded as a requirement, but such condition does not obtain in this State, though it may be considered by the jury as a circumstance in corroboration of the genuineness of the document.

In regard to the first of these requirements, we deem it proper to say, in view of the evidence hereafter to be discussed, that the purported date of the document does not of itself prove anything; for anybody may have forged the written date only a short time before the trial. When these requirements have, in the opinion of the trial judge, been sufficiently met, the rule does not require the calling of the attesting witnesses nor the offering of other usual evidence, in order for the document to go to the jury. When such other evidence is accessible, the failure to produce it may be a subject of comment, but it does not affect the question of the admissibility of an ancient document as evidence.

But, though the judge has deemed the evidence sufficient to allow the document to go before the jury, it is not to be inferred from such action on his part that the document is genuine, for it simply means that there is such proof of the essential requirements as is deemed sufficient to permit the document to go before the jury, in order that they may consider and pass upon the issue as to its genuineness. And, in determining the issue, they are entitled to look to all the evidence tending to prove or disprove any fact necessary to be shown to and considered by the trial judge in the first instance in determining whether the document should be admitted in evidence. (Stooksbury

v. Swan, 85 Texas, 563; Reynolds v. Weinman, 33 S. W., 302.)   Even if the jury should find, after the document has been admitted in evidence, all the requirements essential to the admission of the instrument were established by plaintiffs' testimony, still, if the defendant has come forward with other testimony to the contrary, no artificial probative force as to the genuineness of the document can be given to the fact that it is an ancient instrument.   For as is said: "It is a fallacy to attribute (as do some judges) an artificial probative force to a presumption, increasing for the jury the weight of the facts, even when the opponent has come forward with some evidence to the contrary."   (4 Wigm., Ev., sec. 2491.)   Under our system the law gives no artificial value to evidence, but leaves it to the jury to weigh and determine its value and probative force.   Therefore, though every fact necessary to establish an instrument as an ancient document may be proved to the entire satisfaction of the jury, the jury, though they should find it an ancient document, are not bound to find as a matter of law that the instrument is genuine, especially if there be evidence to the contrary.   If a deed were forged today, and should, thirty years hence, be proved to have come, apparently bearing "an honest face," from some place where it would be natural to find a genuine document of its purport, it would still be a forgery.   For no evidence can make that which is spurious genuine.

It would seem from what has been so far said that it was the duty of the trial court to submit the issue as to the genuineness of the deed in question.   But we are not disposed to rest our ruling upon it, but will state and discuss the evidence adduced by the respective parties upon the issue as to the genuineness of the document.   What will be said in reaching a conclusion upon the issue will also dispose of the third assignment of error, under which it is claimed that the verdict is so clearly against the preponderance of evidence that it was the duty of the court to set it aside.

The original deed was introduced in evidence.   It recites a cash consideration of $1,000, and describes the land as follows:   "All that tract, lot or parcel of land containing four thousand, four hundred and thirty-eight acres, and being the league of land granted to me, the said McGee, by Geo. Anto. Nixon, Commissioner of the Empresario Lorenzo de Zavalla, which land is situated in Jefferson County on Cabiceras Bayou adjoining the land of Francis Valores on the east, and for further description of said land reference is hereby made to the original plat and field notes of survey, which are on file and of record in the General Land Office of this Republic, and reference may also be had to the title papers which are herewith handed to the purchaser."   The instrument is signed "Jesse McGee," apparently in the same handwriting as the deed itself.   Following the signature is a circular scroll in which is written the word "seal."   The names of P. May and Joseph McCrary are signed to it as witnesses.   To it is pasted the certificate of acknowledgment, purported to have been made by the grantor himself on January 14, 1840, before Martin Parmer, Chief Justice and ex-officio notary public of Jasper County.   To the certificate is affixed a seal having in the center a star of five points around which the words "Jasper County Court" are impressed.   The original document is be-

fore us, having been sent up in obedience to an order of the trial court. The certificate of acknowledgment appears to be in the same handwriting as the original instrument, though upon different kind of paper which is better preserved and not so discolored by age. The signature of the officer taking the acknowledgment to the certificate appears to be made by a different hand from the one who wrote the instrument. On the instrument appear the following endorsements: "Jesse McGee to William Dobson. Deed. Filed for record Feby. 21, A. D. 1846. Recorded same day book E, pages 367 and 368. Fees, $1 and 17/100. Alexander Calder, Clk. Co. J. C. Filed in Newton County for record March 27th, 1871, at 8 o'clock a. m. G. J. P. Hardy, D. C. N. C." There also appears upon the reverse sheet of paper from the one the deed is written on certificates of record of the deed in Newton and Sabine Counties. The deed appears to be a very old document, and it was filed for record in Jefferson County February 21, 1846. It was proved that the signature of Martin Parmer to the certificate of acknowledgment was genuine, and that he and Jesse McGee both lived in Jasper County and were well acquainted with each other. The evidence shows that this deed, as well as the others which form links in plaintiffs' chain of title, was found in the possession of Samuel West, plaintiffs' ancestor, and that he delivered it with his other muniments of title to Samuel A. West, one of the plaintiffs. No change or alteration in the deed was shown. In short, the evidence, to our minds, proves conclusively all three of the requisites essential to constitute the deed an ancient document. And, as to this, we do not think there can be any difference of opinion among reasonable and fair-minded men. As before indicated, while this may be regarded as persuasive of the genuineness of the deed, it is not conclusive. But the record is not without other evidence tending a long way towards showing that McGee executed the deed.

At the time the deed bears date, Jesse McGee was living in Jasper County. A short time afterwards he moved to Polk County, where he resided until 1866, when he moved with his family to Denton County. He lived there until 1879, when he went back to the land involved in this suit. His grandson, Richard McGee, testified that before McGee started back he heard a conversation between him and his wife, in which the former told her that he was waiting to go back here (Sabine County) "and was making preparations to come" and his wife said to him, "You sold that land once and I wouldn't have anything more to do with it;" that he replied, "I know I sold it but I got but little for it, and if I can get it back it is all right;" and she then said to him: "You know you sold that to Dobson once." He then said: "I know I have sold the place once and got little for it and you never signed the deed, and if I can get it back it will be that much." After he returned to the land, according to the testimony of several witnesses, he repeatedly stated in substance that he had previously sold it, but that there was some defect in the deed; that his wife never signed the deed, and that he had got but little for it and he intended to sell it again. From 1840 to 1880 McGee paid no taxes on the land, and so far as the record shows he asserted no claim to the title thereto. The evidence shows that Samuel West, plaintiffs' an-

cestor, who resided in Cincinnati, Ohio, paid taxes on the land and claimed title thereto, thinking that it was in Jefferson County, from the time he purchased it in 1848 up to 1860. In 1871 Samuel West gave his grandson, Samuel A. West, the papers relating to the land and instructed him to go to Texas and look it up and pay the taxes on the same. In obedience to his instructions Samuel A. West came to Texas in 1871, and upon investigation ascertained that the land was situated in Sabine and Newton Counties. Whereupon he had his grandfather's title papers to the same recorded in those counties, and arranged with his agents in Austin to pay the taxes past due thereon, as well as future taxes, leaving with them the money with which to pay the taxes then due, and afterwards sent them money to pay the other taxes. While on this trip Samuel A. West went on the land and found a man living on and cultivating a small portion of it. He then arranged with this person to look after the premises for his grandfather and keep off trespassers. From that time until his death, in 1879, Samuel West paid the taxes on the land, and after his death they were paid by the defendants.

In the absence of any other evidence to the contrary, the testimony thus recited, if true, would, in connection with the fact that the deed is conclusively shown to bear all the essential requisites of an ancient document, if not conclusive of the genuineness of the deed in question, be very cogent evidence of such fact. Indeed, so convincing would it be that the writer would not hesitate to say that the first two assignments of error presented are well taken.

But we have thus far presented and considered only the evidence on plaintiff's side. of the issue. The defendants' as well must be stated and considered with it as a whole before it can be determined whether these assignments should be sustained. Now, as to the testimony relied upon by defendants to show that the deed is a forgery: It will be observed from the instrument as copied above that it describes the land as situated in Jefferson County on Cabiceras Bayou, adjoining the land of Francis Valores on the east, and refers for further description to the original field notes of survey filed and of record in the General Land Office of the Republic and also the title papers handed with the deed to the purchaser. Of the title papers thus referred to was an original Spanish grant to Jesse McGee, which was with the deed in question when it came into plaintiffs' possession. This grant describes the land as being in Jefferson County and otherwise describes it in the same language as the Dobson deed. In May, 1846, Dobson deeded the land to Lawrence by the following description:

All of that certain league of land situated, lying and being in the county of Jefferson and State of Texas, containing 4,428 acres, and known as the league which George Antonio Nixon, as Special Commissioner of the Mexican government for the colony of Lorenzo de Zavalla, granted to the settler Jesse McGee on the 23d day of October, 1836. Said land is situated west of the River Neches, on the headwaters of a .bayou about three miles south 10 degrees east of Little Pine Island Bayou, and this survey begins at the S. W. corner of the survey made for Francis Valeres, thence S. 5,000 varas to a stake and mound in prairie, making second corner. Thence west

5,000 varas to a stake and mound also in prairie, forming the third corner. Thence north 5,000 varas to a stake and mound for the fourth and last corner. Thence east 4,990 varas to the beginning. For a more full description of the land hereby conveyed reference is made to the field notes of the surveyor Arthur Henrie. This league of land was conveyed by the aforesaid Jesse McGee to me, the said William Dobson, by deed bearing date the 14th day of January, A. D. 1840, and acknowledged the same day before Martin Parmer, notary public of the county of Jasper and Republic of Texas, which deed, together with the original grant in the Spanish language, from the aforesaid George Antonio Nixon to the aforesaid Jesse McGee, also the translation in the English language of this grant, translated this day by John M. Dor at the city of New Orleans, is delivered with the delivery of this deed by the said Dobson to the said Lawrence." This "Dor translation" shows the signature "Jesse McGee," and describes the land as it is described in plaintiffs' title—that is, the Jefferson County land. The "original grant" referred to was signed "Jesse McGee" and contained the same description of the land. Jesse McGee could not write his name; when he signed it it was done by making a cross mark. This is shown by the testimony of his daughter, who is his only living child, and by the original deeds made by him under which defendants claim, all of which are signed by his mark. Yet his application for the survey in Jefferson County, as well as the deed under which plaintiffs claim, are signed without his mark.

From this it is argued by defendants' counsel that one of three conditions must exist: (1) The purported original Spanish grant accompanying the deed is genuine and grants land in Jefferson County to Jesse McGee, which was conveyed by him to Dobson, and there were, therefore, two valid grants to Jesse McGee, one in Jefferson County and the other in Newton and Sabine Counties; (2) this grant is genuine, and there were two different persons of the name of Jesse McGee, one of whom received the Jefferson County grant and the other the Sabine and Newton County grant; or (3) the purported grant upon which plaintiffs' title rests, and referred to in the deed, is a forgery. Counsel then say: "One of these propositions must be true." And then propounds the questions: "Which does plaintiff accept and base their title on? Do they meet the question?"

If it were shown that the original purported Spanish grant accompanying the deed was genuine, unless canceled or in some way abrogated, it must exist today. That it is not in existence appears from the official map of Jefferson County which shows that the land described by the purported original Spanish grant is covered by the James Hoggatt survey, which was granted to Hoggatt on January 18, 1835. The map shows no Jesse McGee survey in that vicinity. There is nothing in the evidence in any way tending to show the genuineness of such purported grant to McGee or that such a genuine grant ever had an existence. On the contrary, it conclusively appears from the evidence that but one headright survey was ever granted by the State of Coahuila and Texas to Jesse McGee, and that one is the survey in controversy which is located in Sabine and Newton Counties; and that the McGee to whom it was granted is the identical person from whom

all the parties to this action deraign title. This leaves no basis for the two first propositions asserted in defendants' argument. As neither can be true, if the argument were sound, plaintiffs must accept so much of the last proposition as asserts that the purported Spanish grant referred to in the deed from McGee to Dobson is a forgery. It would by no means follow from their being placed in this attitude that their title rests upon the forged grant. We think from the evidence that it is almost conclusive that the purported Spanish grant found with plaintiffs' title papers, and which must have been handed Dobson when the deed in question was delivered, was a forgery; for the appearance of McGee's name as the grantee can be accounted for upon no other hypothesis.

It is, however, the deed from McGee to Dobson which defendants seek to show a forgery. Does the fact that the Spanish grant is a forgery, which sticks to it from beginning to end like the shirt of Nessus, tend to show the deed in question is a forgery? When this fact is taken and considered in connection with the other testimony, we are inclined to the opinion that it does. Like a man, the genuine worth of a title paper may be estimated by the company it keeps. Whoever executed and delivered the deed in question, at the same time delivered the Spanish grant in which McGee's name appears as the grantee. The evident purpose of its delivery, as shown by the recital in the deed, was to describe the land intended to be conveyed, which it states itself is situated in Jefferson County. If McGee made the deed, why did he do this? He knew that the land granted to him on October 23, 1835, by the State of Coahuila and Texas, was situated in Sabine and Newton Counties and not in Jefferson, for he had lived on and was in actual occupancy of the survey prior to the time the deed bears date. It is therefore unreasonable to suppose that if he intended to convey the land in controversy he would make a deed describing it as situated in a different county; and, in aid of such description, or as evidence of his title, deliver the purported Spanish grant to the purchaser. It is equally improbable that one purchasing the land granted to him would accept a deed which on its face showed that the land was situated in Jefferson County, and receive, as evidence that it was situated as described in the deed, the purported Spanish grant. One would hardly buy land from a person living on it and pay a thousand dollars for it in ignorance of where the land was situated. Who Dobson was, where he lived or what became of him, no one knows. From aught that appears, the name "William Dobson" may have been simply used for the purpose of effecting the forgery, the forger intending to use it as a medium of profiting by his fraud in deceiving some one who could be induced to purchase under the forged title. It is certain that plaintiffs' ancestor, Samuel West, who purchased from Sheldon under the chain of title emanating from the deed in question, was led to believe that the land was, as described in the deeds comprised by such chain, situated in Jefferson County, and that he continued in such belief from 1848 until 1871, when his grandson, whom he sent to look after the land, learned and informed him that it was not in Jefferson County, but lay in Sabine and Newton Counties. If, as must have been the case, some one forged the name Jesse McGee to the Jefferson

County Spanish grant, it is fair to presume that the same person
forged the same name to the Dobson deed.

This is not refuted by the testimony of Richard McGee, a grandson
of Jesse, who first gave it as his opinion that the certificate of ac-
knowledgment to the Dobson deed was in his mother's handwriting,
and then stated that its date, 1840, was, he thought, prior to the birth
of his mother; for if the latter opinion is correct the former can hardly
be. It is claimed that clairvoyants can force the dead to write, but no
necromancer has ever claimed to have forced the handwriting of the
unborn. Nor is the evidence of forgery overcome by the testimony of
J. M. Parmer, a son of Martin, who identifies the certificate as being
in his father's handwriting, for his reputation for veracity was im-
peached. The testimony of the witnesses who swore they heard Jesse
McGee admit that he had sold the land, was for the jury to say
whether it was true or false. They did not have to believe it, and it
seems to us that there were reasons for their rejecting it.

There are other circumstances which might be taken in support of
the theory that the deed in question is a forgery. But it is not our
purpose in considering these assignments to go beyond the point neces-
sary to show that there was evidence which required the court to sub-
mit the issue of the genuineness of the deed to the jury and to show
that the verdict is not clearly against the weight of the evidence.
We believe the evidence stated and its consideration has brought us to
that point. We, therefore, refrain from going further, and overrule
the first, second and third assignments of error.

When that part of the charge which is challenged by the fourth as-
signment of error is read and considered in connection with the entire
charge, it will not be found obnoxious to the objection urged by the
assignment. The effect of the charge in question is to submit the issue
of whether the deed purporting to have been made by McGee to Dob-
son was in fact made by the original grantee, Jesse McGee. If it was,
the jury were required to find for the plaintiffs; if not, then to find
for defendants. If it was not made by the original grantee, though it
may have been executed by some other Jesse McGee, it was necessarily
a forgery; for no one can, because he bears the same name of another
who is the owner of a tract of land, intentionally convey it, knowing
that he does not own the property, without committing forgery. It
was simply in explanation of this principle, as applicable to forgery,
that the court instructed the jury that, should they believe from the
evidence that some other Jesse McGee, and not the Jesse McGee to
whom the land in controversy was granted, executed the deed to Wil-
liam Dobson, then to find for the defendants. The evidence peculiar
to this case, if not absolutely requiring the court to give such part of
the charge, at least authorized and made it proper.

One of defendants' counsel, Charles B. Martin, in his argument to
the jury, used this language: "Gentlemen of the jury, why should this
land be taken from our clients when they bought it from the true
owner and paid every cent it was worth at the time it was bought?
Judge Davis would have you believe that Major West was just a boy
when he came to Texas in 1871 to look after this land for his grand-
father, but I tell you, gentlemen, he was old enough to impress his

grandfather with the idea that he could attend to the business for him. He was old enough to have the title of Major in the federal army and to follow Sherman in his raid through Georgia." At this juncture plaintiffs' counsel objected to the argument upon the ground that there was no evidence showing that Samuel A. West was a Major in the Yankee army, and that it was highly prejudicial to plaintiffs and in violation of the rules of argument. To this objection Mr. Martin replied in the presence of the jury: "I don't know whether he was a Major or not, but they have been calling him Major around here, and he belongs up there, and I guess he was in the federal army." To which remark plaintiffs' counsel objected and asked the court to restrain counsel. Whereupon the court told counsel to keep within the record, that the argument was improper, and instructed the jury not to consider the same or be influenced thereby. One of the grounds in plaintiffs' motion for a new trial was that these improper remarks of counsel prejudiced the jury and influenced them in their verdict; and the fifth assignment of error is directed against the action of the court in overruling that ground of plaintiffs' motion for a new trial.

It is a matter of exceeding regret that a lawyer in this State, who should be a devout and faithful minister at her altars of justice, should either so far forget his high office, or wilfully abuse it, as to indulge in such remarks as those quoted. The soldiers on either side in the mighty armies who fought the battles of the great war between the States have looked upon the war as over for nearly fifty years, and have regarded the compact between the States which form the American Union stronger and more sacred because cemented by the blood and sealed by the death of their heroic comrades who were buried in the trenches on bloody battle fields. True, the bloody shirt has been waved by politicians North and South in defiance of the sentiments of patriots; but no instance can be recalled by the writer where it has ever before been flaunted before a jury by a lawyer in a temple of justice in the State of Texas. In this case we believe it would be unjust to the jury who tried it to hold that they so far forgot their duties and sacred oaths as to be influenced or prejudiced in the least by the language of counsel complained of. Especially, when they were informed by the court that the language was improper and instructed not to consider or be influenced by it. It must be presumed, in the absence of any indication to the contrary, that the jury regarded such instructions. A right-minded jury in this State would, we think, be more apt to be prejudiced against the client of counsel who uttered such language than against the adverse party on account of it.

The seventh and eighth assignments of error complain of objectionable language used by the same counsel in addressing the jury. It is deemed unnecessary to copy the language complained of, for nearly every lawyer knows when the bounds of legitimate argument is exceeded. It is sufficient to say that the trial court correctly held that it was improper and instructed the jury to disregard it, and that it will be presumed that the jury obeyed the instructions of the court.

Since the conduct of a jury in its deliberations may now be inquired into for the purpose of impeaching their verdict, and inasmuch as plaintiffs failed to show that language excluded as evidence from

the document, which the ninth assignment claims should not have been permitted to be taken out by the jury, was read by any of the jurors, we do not think that the mere fact that the jury took the instrument with them when they retired to consider their verdict affords any ground for reversing the judgment.

We have thus considered all the assignments of error insisted upon by the plaintiffs, and finding none well taken, the judgment of the District Court is affirmed.

### ON MOTION FOR REHEARING.

In disposing of this motion we wish to say that the facts stated therein under the head of "Facts proving the genuineness of the Dobson deed" are fairly shown or deducible from the evidence in the case, and that, while they were not all recited in our opinion, they were considered in connection with other evidence in determining whether the jury was warranted by the evidence in finding that said deed was a forgery, and that we wish to be understood as finding that the facts so recited were proved by the evidence, so that appellants may have the advantage of such findings in presenting their application to the Supreme Court.

Despite such evidence and facts, regardless of what might have been the decision of this court had it been primarily its duty to pass upon the issue, we deem that there was evidence requiring the issue of the forgery to be submitted to the jury. This is said in view of the rule which obtains in this State, that whether there is any evidence upon an issue is a question for the court to decide, and whether the evidence is sufficient to prove an essential fact is a matter primarily for the jury to determine. When the jury has decided an issue, properly submitted by the court, it is not the province of an appellate court to disturb the finding, unless it is manifestly against the clear preponderance of the testimony. There being evidence requiring the submission of the issue, and not being able to say that the verdict upon it was clearly against the weight of the testimony, we deemed it our duty to find in accordance with the verdict, though we might have found differently had it been our province to determine the question in the first place.

By saying in our original opinion that the witness Parmer was impeached, we did not intend to use the word "impeached" in the sense that he was shown to be unworthy of belief by the testimony of the impeaching witness as to his reputation for truth and veracity, but only in the sense that testimony for the purpose of impeaching his reputation for truth had been introduced from which the jury may have disbelieved his testimony. With his credibility, or of that of the witness who was introduced to impeach his veracity, we have nothing to do, for these are matters within the exclusive province of the jury.

With these explanations of the original opinion the motion for rehearing is overruled.

*Affirmed.*

Writ of error refused.