St. Louis Southwestern Railway Company of Texas v. T. J. Taylor.

Decided December 4, 1909.

**1.—Evidence—Personal Injuries—Expert Testimony.**

In an action by a section hand against a railroad company for damages for injury to plaintiff's back caused by a sudden and violent jerk of the train from which he was unloading cross-ties. the following question by plaintiff's counsel on redirect examination of the physician who had attended plaintiff after the injury, to wit: "Suppose that a man was standing facing west and he was suddenly moved backward and forward and south, could that swelling you found on the plaintiff's back be produced by that kind of movement," held proper in view of the questions propounded by defendant to said witness on cross examination and the answers thereto.

**2.—Special Charge—Modification.**

An addition by the court to a special charge requested by the defendant, wherein the defendant sought to explain to the jury the meaning of the phrase "mental suffering," considered, and held not subject to the objection that it modified or destroyed the effect of said special charge. Said addition simply instructed the jury to disregard an argument of counsel urging as a basis for damages such amount as the jury would take to be placed in plaintiff's injured condition.

Appeal from the District Court of Hunt County. Tried below before Hon. L. A. Clark, Special Judge.

*E. B. Perkins* and *Templeton, Crosby & Dinsmore,* for appellant.

*B. Q. Evans* and *Sherrill, Mulkey & Hamilton,* for appellee.

RAINEY, CHIEF JUSTICE.—Appellee brought this suit against appellant to recover damages for personal injuries inflicted upon him by the negligent handling of a work train on which he was working unloading cross-ties, the petition alleging that while plaintiff had hold of a tie, trying to shove it into position so that the other members of the crew could take hold of the tie, the agents and servants in charge of and operating said train negligently caused said train to be jerked forward and backward with great force, making an unusual, sudden and unexpected movement of the car which caused the injuries alleged.

The defendant answered by general denial and assumed risk, in that, if plaintiff was hurt by the operation of the train, such operation was the usual, proper and necessary operation in the unloading of ties, and that plaintiff was guilty of contributory negligence in not being on his guard against such movements.

A trial resulted in a verdict and judgment for plaintiff for $5,500, from which this appeal is taken.

The evidence shows that appellee was a section hand in the employ of appellant, and was engaged with others at the time of his injury in distributing cross-ties along appellant's track from a train. The ties were being thrown from a car, and at a time when he was about half bent, having the end of a tie in his hands trying to shove it over where his co-workers could get hold of it, the train made a sudden, severe and hard jerk, backward and forward movement, which injured appellee, as described by him: "As I was standing with the tie in that position there came a sudden, hard jerk, a double jerk, and it seemed like something tore loose there in my back, and I just fell down like a beef shot. I can't describe my feelings—an awful cutting pain—seemed like something broke, tore or slipped in my back or right hip, on the lower part of my back."

The evidence was conflicting as to the manner and mode of the operation of the train on that occasion, and as to the extent of appellee's injuries, but we conclude it was sufficient to warrant the verdict, and therefore overrule appellant's assignment of error that the judgment is against and contrary to the great preponderance of the evidence.

The appellant complains of the admission of certain testimony, over objections, as shown by the following bill of exceptions, to wit: "Be it remembered that upon the trial of the above-entitled and numbered cause, and while the plaintiff's witness, Dr. J. H. French, was on the stand, and after he had testified that he examined plaintiff on January 18, 1908, and found a swelling on his back, as shown by the statement of facts, he was asked by the plaintiff's attorney this question: 'Doctor, suppose that a man was standing facing west, and he was suddenly moved backward and forward and south, could that swelling you found on his back be produced by that kind of a movement?' The defendant objected to said question on these grounds:

(1) Because it called for the opinion and conclusion of the witness. (2) Because it called for the opinion and conclusion of the witness upon some of the facts of the case. (3) Because it called for the opinion and conclusion of the witness upon some of the issues of fact in the case that are for the jury only to decide and are not the subject of expert testimony. (4) Because it called for the opinion and conclusion of the witness upon a hypothetical case not made by the evidence. (5) Because it called for an opinion and conclusion of the witness upon matters concerning which it had not been shown he was qualified to give an expert opinion upon. (6) Because it called for the opinion and conclusion of the witness about a matter that was too remote and speculative. (7) Because the evidence sought to be elicited was immaterial and irrelevant. The said objections were overruled by the court and the defendant at the time excepted and the witness answered, 'Yes, sir.' Thereupon plaintiff's counsel asked the witness this question: 'Why and how?' The defendant renewed all the above stated objections and urged the same to this question, which objections were overruled by the court and the defendant at the time excepted, and the witness answered the question, saying: 'From the sudden motion that the body is thrown in would produce the swelling.' To which said rulings of the court in admitting the said testimony over the objections of the defendant as aforesaid the defendant at the time excepted and tenders this its bill of exceptions and asks that the same be approved and filed as a part of the record herein." The bill was approved by the court with this explanation: "The questions objected to were propounded to the witness on re-direct examination and in rebuttal to the following questions propounded by the defendant on cross-examination to the same witness and the following answers made by him to each question: Q. 'About the question of dislocating the back-bone—about dislocations of the back-bone; let us see about that; those dislocations often occur down there in that part of the back; is it not more likely to occur in the neck on account of not having so much protection?' A. 'More accidents of that kind——.' Q. 'Has it not got to be somewhere where there is a swing in order to get weight and force to produce some dislocation—either that, or some direct application of outside violence in order to produce a dislocation of that kind down there?' A. 'Might be in a twist around.' Q. 'Up here in the neck you can produce a dislocation because the head will give and swing and can be thrown out of joint, either voluntary or by sufficient force to the head?' A. 'Yes, sir.' Q. 'There is room for swing there?' A. 'Yes, sir.' Q. 'It would be more difficult in the back-bone down there because you can't get a swing to that bone?' A. 'Yes, sir—would take more.' Q. 'Think it could be done by a fall?' A. 'Yes, sir.' Q. 'Would it not require a fall to dislocate the back-bone?' A. 'A sudden wrench might be enough to injure the nerve.' Q. 'Dislocate the back-bone?' A. 'Don't understand me that that back-bone slipped.' Q. 'Dislocation means what?' A. 'Breaking loose of these ligaments that hold it to its place.' Q. 'Slipping it out of its place and slipping back?' A. 'Yes, sir.' Q. 'What kind of force would have to be applied?' A. 'Either a direct blow or a wrench—sudden creak of the neck.' Q. 'You found no place on the back-bone

itself out of place?' A. 'If it was out it slipped back—smooth as far as I could tell.' Q. 'Now, doctor, suppose that a force is applied to the body, to wrench the body, how could you apply the force so as to wrench the back and cause a dislocation when the body was loose at both ends?' A. 'A man would have to be in the air a long time to be loose at both ends.' Q. 'Say he is on the ground and has his hands on something, not fastened; how will you apply a force to his back to dislocate his back?' A. 'A fall might throw him sideways.' Q. 'If his feet and hands were both loose, not tied—his body loose—would not his body give before his back would break? Give him a jolt or jar or jerk, would not his body give first?' A. 'I think a wrench.' Q. 'To give a dislocation?' A. 'Luxation.' Q. 'That means partial dislocation?' A. ' Yes, sir.' Q. 'If I fasten one end fast, and come back (illustration)—say if this pencil is held loose and I apply any force to the pencil the whole pencil will give—won't break at all. If I apply a force to the pencil and have it in this position it will not break at all?' A. 'Owing to the amount of weight and amount of force.' "

We think there was no error in admitting the testimony complained of. The witness was a practicing physician, and he was qualified to express an opinion as to what might result to the body by being moved in the manner indicated by the questions propounded to him. It did not call for an opinion based upon conflicting evidence as to which was correct, which should have been determined by the jury, and therefore it was not an invasion of the province of the jury. (Missouri, K. & T. Ry. Co. v. Hawk, 30 Texas Civ. App., 142.)

Objections were made to the testimony of Drs. French and Smith, experts, where similar questions were asked and answers returned similar to the ones discussed above. What we have said applies with equal force to these and such objections are overruled.

The appellant complains of the charge of the court wherein the facts were grouped, and that if the defendant was guilty of negligence to find for plaintiff. The complaint is, in substance, that it did not correctly state the law, nor correctly apply the law to the facts, was on the weight of the evidence, and was confusing and misleading. None of these objections, in our opinion, are tenable. Another criticism is, in substance, that the court authorized a recovery without reference to assumed risk and contributory negligence of appellee. The court by its main charge, and special charges given, fully covered these issues, and the charge, when considered as a whole, as it should be done, is not subject to the criticism urged.

The court's charge on the measure of damages is not subject to the criticism urged. It is more favorable to the defendant than the law authorizes under the evidence, and the appellant can not complain.

The sixth assignment of error is: "The court erred in the addition and modification to defendant's special charge No. 8, in instructing the jury that in estimating plaintiff's damages the jury should be governed by the measure of damages set forth in the general charge, and by such addition and modification destroying defendant's said special request." The special charge with the addition complained of is as follows: "You are instructed that by the term 'mental suffering,' as

used in the general charge of the court is meant such mental suffering as is incident to and as naturally and normally flows from physical injuries and pain, and it does not embrace mental depression or suffering or brooding or worry, resulting from any other cause or consideration.

"Templeton, Crosby & Dinsmore,
"Attys. for defendant."
"Asked and given after the main charge was read to the jury.
"L. A. Clark, Spl. Judge."

"You are further instructed that if you should find for plaintiff you will in estimating the damages be governed by the measure of damages set forth in the general charge. You can not base the amount to be recovered, if any, upon what you would take to be placed in his condition, and can not consider any argument of counsel urging any such basis of recovery.

"L. A. Clark, Spl. Judge."

We are of the opinion that the additional charge complained of in no way modified the special charge. It made no reference thereto, and could only have been construed by the jury as referring to the argument of counsel urging an improper basis for damages. We see no reason why the jury should have been misled to defendant's injury.

Finding no reversible error the judgment is affirmed.

*Affirmed.*

Writ of error refused.