**STATE et al. v. TEXAS PAC. COAL & OIL CO. et al.   (No. 6441.)**

(Court of Civil Appeals of Texas. Austin. Dec. 21, 1921. Rehearing Denied Jan. 18, 1922.)

1. **Appeal and error ⟋1001(1)—Where evidence justified verdict, duty of appellate court to affirm.**

Where, in a boundary suit, the evidence amply justified the verdict, and there is nothing to indicate that the jury was influenced by improper considerations, it is the duty of the appellate court to sustain the verdict.

2. **Trial ⟋295(5)—Instruction, when considered with charge as a whole, held not erroneous, in that jury were not told to follow footsteps of surveyors.**

In a boundary suit, an instruction that the jury in constructing the survey should go where the surveyor went, as shown by the evidence of lines actually established and corners marked as found on the ground, and, if it could not do so, then determine the question from the calls in the field notes according to the general rules then laid down, was not erroneous, in that primary duty of jury was to follow footsteps of surveyor, when considered with the charge as a whole.

3. **Trial ⟋194(10)—Instruction on relative importance of calls not objectionable in boundary cases as upon weight of evidence.**

Instruction as to the rules given for determining the relative importance and dignity of calls, while, in a sense, upon the weight of evidence, constitutes no valid objection in boundary cases.

4. **Trial ⟋262—Plaintiffs not entitled to charge inconsistent with charge requested and given.**

In a boundary suit, where the court's main charge laid down the rules to be observed, giving to each its proper rank and weight, but that the jury should adopt that rule in locating the boundaries which to their satisfaction most clearly indicated where the land had been located by the surveyor, and then gave requested instruction that substantially represented plaintiffs' theory, plaintiffs were not entitled to a charge inconsistent with the one given.

5. **Trial ⟋244(2)—Instruction held not to unduly emphasize burden of proof on plaintiff.**

In a boundary suit, an instruction that the burden was on the plaintiffs to show that the land claimed by defendants was not embraced within the boundaries of the land patented to F., and in the concluding portion stating this rule was in effect and telling the jury that, having been already charged that the burden of proof was on plaintiffs, they should proceed to test the proof on certain rules announced in the same paragraph, was not objectionable as unduly emphasizing the burden of proof to be on plaintiffs.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Suit for title and possession by the State of Texas and others against the Texas Pacific Coal & Oil Company and others. From judgment for defendants, defendant named and B. D. Townsend appeal. Affirmed.

C. M. Cureton, Atty. Gen., E. F. Smith, Asst. Atty. Gen., and C. L. Black and G. B. Smedley, both of Austin, for appellants.

Wm. A. Vinson, of Houston, W. J. Oxford, of Stephenville, John Hancock, of Fort Worth, and Brooks, Hart & Woodward, of Austin, for appellees.

BRADY, J. This is a boundary suit. The state of Texas, joined by B. D. Townsend and E. W. Fry, filed the suit against the Texas Pacific Coal & Oil Company et al., for the recovery of the title and possession of a tract of land containing 50.6 acres in East-

land county. Fry was the holder of a permit from the state to prospect for oil and gas on the alleged vacant land, and Townsend, through assignment, became the owner of such permit. The tract sued for is a narrow strip lying between the most northern east line of the Mary Fury survey and west line of the Jno. P. Rohus survey. The Fury was made August 22, 1874, purporting to contain 693 acres; the Rohus was made in 1857.

The case was tried by a jury, and submitted upon the general charge of the court and certain special charges. The verdict was for the defendants, and the state and Townsend have appealed.

The real question in controversy is the true location of the east line of the Mary Fury survey. The field notes of this survey describe it as beginning at the southeast corner of the T. & N. O. survey No. 1, and they describe the bearing trees of the T. & N. O. survey at that corner. The field notes run thence north 2,170 varas to the southwest corner of the B. H. Epperson survey, describing there the bearing trees for that corner of the Epperson. They run thence east with the south line of the Epperson 950 varas to a corner, describing there two bearing trees. They run thence north 950 varas to the northeast corner of the Epperson survey, describing there two bearing trees. They run thence east 1,054 varas, "the N. E. corner of this survey." They run "thence south 2,050 varas, the N. E. corner of the H. Rogers survey on W. B. of J. P. Rohus survey." They run thence west 1,344 varas to the Rogers northwest corner, describing there three bearing trees, two of which are the bearing trees of the Roger's. They run thence south 1,070 varas to a corner, and thence west 660 varas to the place of beginning.

It was the contention of the plaintiffs that the land sued for was vacant land, and that the most northern east line of the Fury survey was, at the south end of the strip, 88 varas west of the Rohus survey, and at the north end 179 varas west of such survey, and the line was 2,143 varas in length. There is no controversy as to the location of the west line of the Rohus survey, and none as to the location of any of the corners of the Fury survey, except its northeast corner and upper southeast corner. Appellants contended on the trial that the northern east line of the Mary Fury survey and its northeast and upper southeast corners are correctly constructed by corners and distances from its identified and undisputed corners; and that the call for the southeast corner of the Mary Fury survey to be at the northeast corner of the Henry Rogers and west line of the Jno. P. Rohus was, under the undisputed facts, made by mistake and by conjecture, and should be disregarded. Appellees contended that the northeast corner of the Henry

Rogers survey had been identified by a pile of rock and a marked bearing tree, and was fixed in the west line of the Rohus by the evidence offered, and that the call for the Rogers corner was controlling, although to so extend the line would take it beyond the distance called for in the field notes.

It is insisted by appellants that the verdict of the jury and the judgment are without evidence to support them, and contrary to the great weight and preponderance of the evidence; also that they were entitled to a peremptory instruction. They relied largely upon the testimony of J. A. Bedford, whose name is signed to the field notes of the Mary Fury as one of the chain carriers, and who was engaged in making that survey and ran the instrument a good part of the time, having charge of the work. The testimony of this witness strongly tends to support the theory of the state and its permittees, but there is a mass of evidence in the record which would have justified the jury in discrediting his testimony, especially as to the reliability of his memory. These contradictory facts, as well as intrinsic circumstances in his testimony, give strong, if not convincing, support to the theory of the defendants. It would serve no useful purpose to here set out the evidence nor all the facts established thereby.

The evidence was sufficient to support these conclusions: (a) That the Rohus west line and its southwest corner were definitely fixed by the surveyor Erath in 1857, and continuously since that time have been well known and recognized, and that their location was known to Bedford in 1874, when he made the Mary Fury survey; (b) that the southeast corner of the Rogers as fixed by Erath was in the west boundary line of the Rohus as run by him; (c) that Bedford knew where the southeast corner of the Rogers and the west boundary line of the Rohus were when he made the Ahrenbeck and little Mary Fury surveys, just a few days before he made the Mary Fury survey in controversy, and that he must have known at the time he made the latter survey where the Rogers northeast corner and the Rohus west boundary line were. The previous work of Bedford on senior surveys in the immediate locality and which he tied to the Rohus lends strong support to this conclusion, as well as other facts and circumstances not necessary to mention.

[1] The evidence amply justified the jury in declining to accept Bedford's testimony, and in adopting defendants' theory of the case. In these circumstances, the verdict will not be disturbed by this court. There is nothing to indicate that the jury were influenced by improper considerations, and it is, therefore, the duty of the appellate court to sustain the verdict. This is true, even though we might have reached a different

conclusion from the evidence as it appears in the record. Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 514; Ry. v. Taylor, 58 Tex. Civ. App. 139, 123 S. W. 714; West v. Houston Oil Co., 56 Tex. Civ. App. 341, 120 S. W. 228; Boettler v. Tumlinson, 77 S. W. 824; Ry. v. O'Donnell, 58 Tex. 27; Lindsley v. Sparks, 20 Tex. Civ. App. 56, 48 S. W. 204. We do not wish to be understood as intimating, however, that our conclusion would have been different, upon the facts in the record, if the question had been committed to us.

The assignments raising the question of the sufficiency of the evidence and of the right of appellants to a peremptory instruction are overruled.

[2] Appellants next complain that the trial court erred in instructing the jury that the main object of inquiry was to ascertain the true location of the land as described in the field notes in the patent, and in failing to instruct the jury, as requested by appellants, that the principal object of inquiry and the primary duty of the jury is to follow the footsteps of the surveyor on the ground; and that the rules given by the court with reference to the relative importance of calls were but rules for the purpose of determining where the surveyor actually went on the ground. We do not think the charge is subject to this criticism. In this paragraph the jury were told, in substance, that the presumption was that the land was actually surveyed according to the field notes, and that the main object of inquiry was to ascertain the true location of the land as described in the field notes and calls. They were specially instructed that—

"Where the lines of a survey have actually been run upon the ground and the corners established, and the lines and bearing trees marked, these, if they can be found, constitute the true boundaries of the land."

The remainder of this paragraph of the charge, before laying down the general rules for determining the relative dignity of calls, in effect, informed the jury that it was their duty to endeavor to ascertain the locality of the land by lines actually run upon the ground, and we think it cannot be doubted that the jury understood they were to endeavor to follow the footsteps of the surveyor, although not told to do so in so many words. Taking the charge as a whole, the jury were substantially instructed that in constructing the survey they should go where the surveyor went, as shown by the evidence of lines actually established and corners marked as found on the ground, and, if they could not do so, then to determine the question from the calls in the field notes, according to the general rules next laid down. There was no error in the charge as drawn, nor in refusing the special charge requested.

[3] Appellants further complain of the charge of the court in so far as it instructed the jury as to the rules given them for determining relative importance and dignity of calls, especially the introductory sentence preceding the general rules announced. Such introductory sentence is as follows:

"When the testimony fails to establish the location of the land described in the field notes by lines actually run and marked, or by established corners appearing upon the ground, or by evidence of enough of these to reasonably identify the land to the satisfaction of the jury, then you should see if you can so identify the same by evidence in regard to other calls, if any, made in the field notes. These other calls, as a general rule, are embraced under one or more of the following three classes."

The specific complaint here is that this paragraph of the charge is on the weight of the evidence, in that it gives undue prominence to marked lines or marked corners. We think the objection untenable, because, ever since Stafford v. King, 30 Tex. 257, 94 Am. Dec. 304, similar charges have been given in boundary cases, with the approval of our Supreme Court, as aids to the jury in determining the relative importance of conflicting calls. That the giving of such rules is, in a sense, upon the weight of the evidence has been recognized, but found to constitute no valid objection in boundary cases. As was said by Mr. Justice Roberts, in Booth v. Upshur, 26 Tex. 70:

"Courts that have to determine between conflicting calls, upon motions for new trials and otherwise, have laid down rules for their decision, founded on reason, experience and observation, which are rules pertaining, not to the admissibility, but to the weight of evidence. They have generally agreed upon a classification of and gradation of calls in a grant, survey or entry of land, by which their relative importance and weight are to be determined. The first class of calls are natural objects, such as rivers, creeks, mountains, etc.; the second are artificial objects, such as marks on trees, and marked lines, etc.; and the third are course and distance. Thus, in the abstract, or other things being equal, a river prevails over a marked line, and a marked line over course and distance."

In this connection, we think it important also to call attention to the fact that the trial court in the preceding section of the charge instructed the jury as follows:

"As a general rule these classes (that is, the rules to be observed in identifying the lines and corners of the survey) are made in the order in which they are named, as first, second, and third; but neither of these should absolutely control the other, when that other most truly indicates from the testimony to the minds of the jury the proper locality of the land in the particular case."

Taking the charge as a whole, we think there was no improper comment upon the

weight of the evidence and no undue emphasis as to the importance of any class of calls. What has been said applies to a further criticism of a portion of paragraph 5 of the main charge.

[4] Appellants requested the following special charge:

"On the question of relative importance and dignity of calls mentioned in the court's main charge, which has been given to you, I give you the following additional charge which you will consider in connection with the main charge, to wit: 'If you find and believe from the facts and circumstances in this case that the true location of the east boundary line of the Mary Fury survey, as originally run or established, can be more certainly found or its location more correctly determined by running the courses and distances called for in the field notes from such corner or corners, if any, of the Mary Fury survey as are established on the ground, than by observing the calls for natural or artificial objects, if any, then, if you so believe, it will be your duty to locate the said east boundary line of the Mary Fury survey by observing the calls for course and distance, if any, rather than by observing calls, if any, for natural or artificial objects.' "

Appellants at the same time presented another special instruction, which was given and which is as follows:

"You are instructed that, if you find and believe from the evidence that the call in the field notes of the Mary Fury survey for its southeast corner to be at the northeast corner of the Henry Rogers survey on the west line of the Rohus survey was made by the surveyor under a mistake as to the location of the said corner of the Rogers survey and the said line of the Rohus survey, and that the true location of the most northern southeast corner of the Mary Fury survey is more correctly indicated from the evidence by course and distance from the undisputed corners of said Mary Fury survey, if any, then you will find a verdict for the plaintiffs."

The court's main charge laid down the rules to be observed by the jury, giving to each its proper rank and weight, and in addition instructed the jury that no one of these rules should absolutely control in the determination of the case under the facts, but that the jury should adopt that rule in locating the boundaries which to their satisfaction most clearly and truly indicated where the land had actually been located by the surveyor. The court then gave the special charge just referred to, which clearly and substantially presented appellants' theory of the case. They were not entitled to have both special charges given, and their rights were fully safeguarded.

[5] It is also claimed by the appellants that the case should be reversed because the court's charge unduly emphasized the burden of proof as being upon the plaintiffs. In the beginning of the charge the court did instruct the jury that the burden was upon the plaintiffs to show that the land claimed by the defendants was not embraced within the boundaries of the land patented to Mary Fury, and in the concluding portion again stated this rule. However, a careful consideration of the latter portion of the charge and the connection in which the burden of proof is there stated convinces us that there has been no undue or improper emphasis of this point. It is, in effect, telling the jury that, having already charged them that the burden of proof was on the plaintiffs, they would proceed to test the proof upon certain rules announced by the court in the same paragraph. This is not a case where the court charged on the burden of proof in the main charge and again charged specially upon it in a special charge given. The effect of adverting to the burden of proof a second time was, in substance, to tell the jury:

"Now, keeping in mind the burden of proof as heretofore charged, you will consider the following rules," etc.

Instead of being calculated to mislead the jurors as to their duties, we think it was calculated to aid them without prejudice to appellants.

Summarizing our holdings on this appeal, we think the evidence sustains the verdict and judgment, and that the court's charge, including the special charges given, was fair, fully covered the issues of the case, and presented the respective theories of the litigating parties. All assignments have been carefully considered and are overruled. The judgment will be affirmed.

Affirmed.