Missouri, Kansas & Texas Railway Company of Texas v.
S. L. Criswell.

Decided January 16, 1904.

1.—Evidence—Expert Testimony—Opinion of Physician.
    A physician may give his opinion as to the cause of an injury, based upon facts which he himself had ascertained in treating the injured person and which facts he had already stated in his testimony, although he assumes the facts he had testified to as true and bases his opinion thereon.

2.—Same—Letter—Part of Transaction.
    Where defendant interrogated a witness in reference to the contents of a letter he had written and introduced in evidence statements therein as to the injury, it was proper to admit all parts of the letter relating to the particular injury.

3.—Same—Hearsay.
    Plaintiff having testified that a physician examined his wife with reference to the injury she had received, could not state further what the physician said as to the injury, as this would be hearsay.

4.—Same—Impeaching Testimony—Predicate.
    Such evidence of the physician's statement might have been admissible to impeach his testimony as given in the case had a proper predicate therefor been laid on his examination. See questions and answers held not to constitute such predicate.

Appeal from the District Court of Hunt. Tried below before Hon. T. D. Montrose, Special Judge.

*T. S. Miller* and *Perkins, Craddock & Wall,* for appellant.

*Evans & Elder,* for appellee.

BOOKHOUT, Associate Justice.—This was a suit by the appellee against the appellant for damages for personal injuries to his wife, Cora Criswell, alleged to have been sustained by her on November 13, 1900, caused by her fall on the depot platform at Floyd. The petition alleged that on the 13th of November, 1900, appellee and his wife were passengers on a passenger train of the Sherman, Shreveport & Southern Railway Company from Greenville to Floyd, Texas; that said company had, constructed and used a platform in connection with its passenger depot at Floyd immediately east of it, adjoining the passenger depot, which was elevated three or four feet from the ground and above the level of the floor of the waiting room; that it had constructed an inclined way in the northeast corner of the depot, extending from the top of the platform to the ground by the side of the depot for the accommodation of passengers and to furnish a means of access from the platform to the waiting room. That it had neglected to construct or place any handhold or railing on either side of the incline, or to place any cleats or steps on the face of the incline. That it negligently and carelessly permitted mud, water and slippery earth to accumulate and remain on the surface of the incline, rendering it slippery, dangerous and hazardous to passengers descending from the platform to the waiting room;

that when he and his wife alighted from the train they went upon the platform at the place and by the means provided by the company for that purpose opposite or near the place where they were discharged from the train, and where passengers usually went after alighting therefrom, and when they reached the incline, and attempted to pass down the same, his wife stepped thereon, her feet slipped from under her, caused by its wet, muddy and slippery condition and the absence of any cleats or steps thereon, and fell violently and with great force on and against the top and edge of the platform and incline, breaking, bruising, lacerating and injuring the lower portion of her spinal column, injuring the spinal cord, lacerating and injuring the pelvic and female organs, causing prolapsus of the uterus and permanent derangement of menstrual flow. That she was then four months advanced in pregnancy, and was greatly shocked by the fall; that the laceration and injury of her female organs caused by the fall produced profuse hemorrhage from the same. It was further alleged that in May, 1901, the defendant became the owner of the Sherman, Shreveport & Southern Railway Company, subject to all its liabilities, etc.

The appellant answered (1) by a general denial; (2) that the injuries to the plaintiff's wife were contributed to and resulted from her own negligence and from risks assumed by her; that if the incline was wet and slippery and without railings or cleats, its condition was plain to be seen, open and obvious to common observation; that she knew it was slippery, or ought in the exercise of reasonable care to have known it; and she voluntarily and negligently went upon the same, carrying in her arms at the time and incumbered with a large child; (3) that it had made and provided an entirely safe and convenient way for debarking passengers from its trains to enter its passenger depot, consisting of a walk along its main track, immediately north of and adjoining the track, and at the south side of the depot, extending from the entrance of the waiting room to and beyond the point where plaintiff and his wife alighted from the train; that the walkway was plain and open, and it was apparent and obvious to anyone leaving the train and exercising reasonable care that it was the way provided for passengers to leave the waiting room, and it was the nearest and most direct route thereto; that the appellee and his wife were not using such way in going to the waiting room, but instead went upon the raised platform at the east end and north side of the depot, intended for and used in connection with the freight business of the appellant, and passed therefrom to the north side of the depot, and in so doing were guilty of negligence contributing to the accident; (4) that the injuries to the appellee's wife were due to and caused by the neglect of herself and the appellee to properly treat her after sustaining the fall; that the appellee wholly neglected and failed to call a physician or surgeon to attend and administer to her injuries, but suffered the same, if she sustained any injuries, from the fall, to continue and become aggravated without attention, and that proper medical attention would have relieved and cured her.

A trial resulted· in a verdict in favor of appellee for $4400, and defendant appealed.

*Opinion.*—1. Upon the trial Dr. Morrow was introduced as a witness by plaintiff, and after testifying that he waited upon plaintiff's wife at the time she was injured at the depot at Floyd, he was asked what, in his judgment as a medical man, was the injury to her caused by. To this defendant objected, because the testimony sought to be elicited was immaterial and irrelevant and called for the opinion and conclusion of the witness on a matter that is peculiarly for the jury to pass upon from all the facts. The objection was overruled and the witness answered that he thought the fall must have broken the coccyx from the fact that it was broken between the first and second joints; that it often happened in sitting down too hard or getting a fall on the buttock that it breaks the coccyx. The court approved the bill of exception, with the following explanation: "Just before the question was asked, Dr. Morrow testified that he reached her in a few minutes after she fell, and learned from her how she got hurt; she told him she was suffering considerable pain in the region of the coccyx; that he had examined her in October, 1902, and again to-day and found a fracture of the lower part of the spinal column, known as the coccyx, a fracture between the first and second joints of the coccyx, or the end of the back bone. He was also asked this question: 'Could that fall have caused the injury to the coccyx?' Ans.: 'Yes, sir.' Neither the question or answer was objected to. Then the question was propounded to him complained of in this bill. The doctor, having qualified as an expert, being a practicing physician for more than twenty-five years, being called to see her within a few minutes after she fell; being familiar with the incline on which she fell, and learning then that she was suffering with pains in the region of the coccyx, and having examined her twice since that time and finding her coccyx broken, and having testified without objections that he thought that the fall could have caused the injury to the coccyx, it was permissible for him again to state that in his judgment as a medical man the injury to the coccyx was caused by the fall and to give his reasons for his opinion that the coccyx was broken between the first and second joints."

In view of the court's explanation, there was no error in admitting the testimony. Dr. Morrow was giving his opinion as to the cause of the injury, based upon facts which he himself had ascertained in treating Mrs. Criswell, and which facts he had previously stated in his testimony. In giving his opinion he assumed the facts which he had testified to as true and based his opinion thereon. This he could legally do. Armendaiz v. Stillman, 67 Texas, 458; Railway Co. v. Eaves, 25 Texas Civ. App., 409, 61 S. W. Rep., 550.

These remarks also apply to the testimony of Dr. Spaulding, the admission of which is complained of in the sixth assignment. We find no error in admitting this evidence.

2. No reversible error is pointed out in the seventh, eighth and ninth assignments of error. These assignments complain in different forms of the action of the court in overruling appellant's exceptions to that part of the letter, dated August 20, 1902, written by Dr. Vaughan to plaintiff's counsel in reference to the condition of Mrs. Criswell, stating: "About the only thing that struck me as being the result of the fall was the condition of her coccyx." It was a disputed point whether the injury to the coccyx of plaintiff's wife was the result of a fall or of childbirth. Dr. Vaughan waited upon her during childbirth in April, 1901, about six months after her fall at Floyd. He testified that the condition of her coccyx might result from childbirth. Dr. Vaughan was shown the letter and testified he wrote it. The witness, on redirect examination by counsel for appellant, testified: "I stated in those letters that the position of the coccyx indicated an old dislocation of long standing; that was my diagnosis of it." The defendant's counsel then read in evidence the letter of August 20, 1902, except that portion first above quoted. On recross-examination the witness was asked by appellee's counsel the question: "You did state in that correspondence that it [referring to the injury of the coccyx] was in all probability caused by the fall?" to which he answered, "I suppose so."

Thereafter the appellee's counsel read in evidence the whole of the letter, including the clause excepted to. The appellant having interrogated the witness in reference to the contents of the letter and introduced in evidence the statement therein that the position of the coccyx indicated an old dislocation of long standing, it was proper to admit all parts of the letter relating to the particular injury.

3. During the examination of the plaintiff as a witness in his own behalf, he was asked by his counsel if Dr. Vaughan made an examination of his wife in June, 1901, to which he answered that he did. Whereupon he was asked this question: "What did he say about it?" To which question and answer sought to be obtained thereby, the defendant objected for the reason that it was hearsay and immaterial and irrelevant, and second, if it was offered in the way of impeachment, that there had been no predicate laid for its admission.

The objections were by the court overruled, and the witness answered: "He told us that he discovered that her coccyx was broken; he said her health was ruined generally; he said the fall was the cause of it; he said it had been caused by a fall; didn't say that fall." To the action of the court in overruling the exceptions to this testimony and in admitting the same defendant took a bill of exceptions, and the ruling is made the ground of its twelfth assignment as presented in the brief. The testimony was hearsay and was not admissible as original evidence. Railway Co. v. Dawson, 29 S. W. Rep., 1106; Railway Co. v. Burke, 55 Texas, 340; Trott v. Railway Co., 86 N. W. Rep., 33.

It would have been admissible as impeaching evidence had the proper predicate been laid. A careful examination of the record fails to show

that any proper predicate had been laid for the admission of testimony to impeach the witness.

Appellee contends that a predicate had been laid in that the testimony was offered in rebuttal, and that Dr. Vaughan had answered on cross-examination: "1 couldn't say positively that it [meaning the coccyx] was fractured, because I did not make a thorough examination. I thought a few months after that it was caused by the fall." He had also testified that he would not say that the injury to the coccyx was or was not caused by childbirth. This evidence does not lay the predicate for impeaching Dr. Vaughan in reference to statements made by him at the time of his examination of plaintiff's wife. The admission of the evidence was error. For the same reason it was error to admit the testimony of Mrs. Cora Criswell, wife of plaintiff, as to what was said by Dr. Vaughan at the time he examined her, the admission of which is complained of in the thirteenth assignment.

4. In assignment numbered 14 in appellant's brief, complaint is made of the ruling of the court in admitting the testimony of appellee as to statements made by Dr. Cantrell, who had, at appellee's request, examined Mrs. Criswell. While testifying in his own behalf S. L. Criswell was asked if Dr. Will Cantrell had examined his wife at his instance. He answered he had. Thereupon he was asked, "Now what did Dr. Cantrell say he found?" Objection was made to the question because what Dr. Cantrell said would be hearsay, and because no predicate had been laid to impeach him. The objection was overruled and the witness answered: "He said he found the coccyx there was fractured, and also the womb was inflamed some way; I can't explain it like he said it was." This testimony was hearsay. It was not admissible for the purpose of impeaching Dr. Cantrell, for no predicate had been laid therefor.

For the errors pointed out in the twelfth, thirteenth and fourteenth assignments the judgment is reversed and the cause remanded.

*Reversed and remanded.*