## McWHORTER v. SCALES & DUVALL. (No. 328.)

Court of Civil Appeals of Texas. Eastland. June 24, 1927.

**1. Trial ☞352(1)—Submitting issue in negative form held error, since burden of proof was shifted thereby.**

Submitting to jury in negative form a special issue relative to cotton brokerage contract *held* error, since the burden of proof was shifted thereby.

**2. Trial ☞205—Upon defense that cotton contract was for dealing in futures, hence illegal, court should have instructed that burden was upon party suing on contract to show actual delivery was contemplated (Vernon's Ann. Pen. Code 1916, arts. 538–547).**

Where, in suit for money expended on cotton brokerage contract, defense was that the transaction was a dealing in futures, within the inhibition of Vernon's Ann. Pen. Code 1916, arts. 538–547, court erred in not instructing that burden of proof cotton purchased was to be delivered, hence was not gambling in futures, was upon the plaintiff.

**3. Appeal and error ☞216(3)—After objection to charge and exception to ruling thereon, one is not required to prepare and tender court proper charge.**

Where defendant had made an appropriate objection to a charge and had excepted to court's ruling thereon, he was not required to prepare and tender to the court a proper charge on the matter complained of in order to avail himself on appeal of the error pointed out.

**4. Trial ☞352(1)—Issue held improperly phrased, since it carried inference of principal and agency relationship when relationship was controverted question.**

Special issue submitted to jury relative to the legality of plaintiff's and defendant's cotton brokerage contract *held* improper as inferring that plaintiff and defendant were principal and agent, since agency itself was a controverted question.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Trial ⟨⟩352(5)—Issue submitted relative to parties' relationship under sales agreement held multifarious.**

Special issue submitted to the jury relative to plaintiff's and defendant's relationship and powers under a sales agreement *held* objectionable as being multifarious, since it contained several questions.

**6. Trial ⟨⟩352(4)—Submission of issue on theory defendant had told broker to close account when margin was consumed held error, there being no supporting evidence.**

Where the only evidence showed defendant had told plaintiff, a broker, that he would not be responsible for further losses when his brokerage margin was consumed, court erred in submitting the issue as if the defendant had ordered plaintiff to close his account when margin was consumed.

Appeal from Dallas County Court; William M. Cramer, Judge.

Action by Scales & Duvall against A. M. McWhorter. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Callaway, Dalton & Calloway, of Dallas, for appellant.

J. H. Synnott, of Dallas, for appellee.

LESLIE, J. In this case the plaintiffs, Scales & Duvall, sued the defendant, McWhorter, for $676.41, paid by them to Roscoe Rockwood & Co., of New Orleans, La., cotton brokers, members of the New Orleans Cotton Exchange. They alleged that, as agents of the defendant, for him and at his special instance and request, they placed with said Rockwood & Co. 44 purchases and 44 sales of cotton of 100 bales each. That by reason of these deals it was necessary for them to remit certain sums and place deposits with the New Orleans brokers, through whom the purchases and sales were made. These transactions extended over a period of time, and in some of them McWhorter gained and in some he lost. The net result was a loss in the amount sued for, which the plaintiffs alleged they had guaranteed to Rockwood & Co., and which amount they allege is due them by the defendant, in that they paid out said sum at his instance and request and for his benefit.

In short, the loss seems to grow out of what the defendant denominates gambling transactions, or "dealing in futures," which were inhibited at the time thereof by articles 538–547, Penal Code (Vernon's) 1916, whereas, the plaintiffs affirm the legitimacy of the transactions and contend that it was the intention of the parties that the cotton in question should be delivered and paid for under the terms of the contracts. This brings us to the controlling point in the appeal.

On the answers of the jury to special issues, the court entered a judgment for the plaintiffs for the amount sued for, and from an order overruling a motion for a new trial the defendant appeals. He assigns error to the failure of the court to give a charge properly placing the burden of proof on the plaintiffs, and in that connection also complains of the form of issue No. 1, which is as follows:

"Was there any agreement between the plaintiffs and the defendant to the effect that there would not be any actual delivery of the cotton covered by the contracts herein in question?"

The question was by the jury answered "No."

[1, 2] That issue should not have been submitted in the negative form in which it is given. Its practical effect is to shift the burden of proof from the plaintiffs to the defendant. The plaintiffs seek to recover on a state of facts upon which they necessarily assume the burden of showing the legality of the transactions out of which the cause of action arises. The charge is silent as to the burden of proof which was part of the law pertaining to that issue and gave the jury no guide relative thereto. The defendant seasonably objected to the issue as stated and the omission in the above respect and assigns error to the action of the court in overruling same. This was error upon the part of the court, who, upon another trial, should affirmatively state the issue and properly instruct the jury that the burden is upon the plaintiffs to show by a preponderance of the evidence that at the date of the cotton transactions it was the intention of the parties that the cotton should be delivered and paid for as specified in the contracts. Assignments to above errors sustained. Puckett v. Wilson Bros. Mercantile Co. (Tex. Civ. App.) 211 S. W. 642; Pate v. Wilson Bros. Mercantile Co. (Tex. Civ. App.) 208 S. W. 235.

[3] After the defendant had made appropriate objections to the court's charge for the omission complained of and excepted to its action thereon, it was not incumbent upon the defendant, as contended by the plaintiffs, to prepare and tender to the court a charge on the matter complained of in order to avail himself on appeal of the error pointed out, and upon which proper assignment is presented. Gulf, C. & S. F. Ry. Co. v. Conley et ux., 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183.

[4, 5] Upon request of plaintiffs, the court submitted to the jury the following issue:

"Could the plaintiffs and defendant, by an agreement between themselves, have prevented any party from enforcing delivery of the cotton bought or sold in New Orleans in carrying out the orders of the defendant through the plaintiffs for the purchase and sale of cotton for future delivery?"

[6] The issue was objected to as being prejudicial to the rights of the defendant in that

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

it caused or was calculated to cause the jury to believe that the court thought the cotton was purchased by "orders of the defendant through the plaintiffs," which would, in substance, direct the jury to find and conclude that the plaintiffs were the defendant's agents, which in itself was a controverted question. A further objection was urged that the issue was multifarious, containing several questions. If the question is at all material, it has each of the vices complained of, and it could well have been objected to upon the further grounds that it is indefinite and confusing. The assignment based on said objections is sustained.

The second issue submitted by the court was:

"Did the defendant, before his margins were all consumed, direct the plaintiff to close out his account and take him out of the market when his then existing margins were exhausted?"

The jury answered "No."

The defendant objected to the submission of that issue, and requested in lieu thereof the following:

"Did A. H. McWhorter, before his margins were consumed, notify the plaintiffs herein that he would not be responsible for any further losses after his margins were consumed?

It is claimed that there was no evidence that McWhorter told the plaintiffs to close out his account and take him out of the market when his then existing margins were exhausted, and that the jury had no alternative but to find that McWhorter did not so direct. An examination of McWhorter's testimony shows that it is to the effect that he would not be responsible for any further losses after his margins were consumed, and that he had $98 to his credit with Scales & Duvall at the time he so notified them. It appears that at least 4 of the purchases occurred after the alleged notice of date December 11, 1924, and his contention is that under no circumstances had Scales & Duvall any authority to make any purchase and sale contract in his behalf on and after that date.

The issue tendered by the defendant was correct and in keeping with the pleadings and evidence, and it was error for the court to give, instead thereof, the one he did give.

There are other assignments attacking the sufficiency of the testimony to support the verdict and judgment. The facts do not seem to have been fully developed, and the testimony tending to establish the liability of McWhorter is meager, especially in the respect that he ever agreed or obligated himself to pay Scales & Duvall any sums that they seem to have guaranteed to Rockwood & Co. There is some testimony that about December 15, 1924, long after plaintiffs and defendant had entered into these transactions, that H.

S. Scales went to see the defendant, at Seagoville, "and told McWhorter that he, McWhorter, was in debt to Roscoe Rockwood & Co., and it would require further margins to make them, Scales & Duvall, safe. That Scales & Duvall were responsible to Rockwood & Co. and would have to pay the loss. That McWhorter at that time agreed to furnish some security in the form of spot cotton tickets." McWhorter never complied with this alleged promise, and by order of Scales & Duvall, Rockwood & Co., on December 31st following, closed out McWhorter's account, at which time he was indebted by reason of losses sustained in the sum of the $676.41 sued for. This amount Scales & Duvall apparently made good to Rockwood & Co.

It may be that Scales & Duvall were bound in some way to pay all such deficiencies in McWhorter's account, and that they did so pay it, but the obligation of McWhorter to reimburse Scales & Duvall for such amount and the consideration for his promise so to do are not at all clear under the testimony presented in this record, granting that the transactions do not fall under the condemnation of our Penal Code, a question we do not pass upon at this time, since we have concluded that the issues should first be tried out under appropriate instructions.

By reason of the assignments of error sustained, the judgment of the trial court is reversed and the cause remanded for another trial, but we are not to be understood as holding that the transactions out of which the claim arises are free from the taint of illegality. That vital proposition should be determined under a fuller development of the facts and with proper instructions to the jury.