## COMMERCIAL STANDARD INS. CO. v. McGEE et al.

### No. 11023.

Court of Civil Appeals of Texas. Dallas.
July 18, 1931.

W. P. Bondies, D. A. Frank, and Hobert Price, all of Dallas, for appellant.

White & Yarborough, of Dallas, for appellees.

VAUGHAN, J.

This suit arose under the Workmen's Compensation Law. On October 14, 1929, an award was made by the Industrial Accident Board on the petition of F. F. McGee, appellee, against Commercial Standard Insurance Company, appellant, as compensation for injuries alleged to have been sustained by appellee in the course of his. employment as an employee of Wyatt Metal & Boiler Works, of Dallas county, Tex. On November 2, 1929, appellant filed its original petition in the court below, appealing from said award. Appellee, his attorneys, Messrs. John White and H. J. Yarborough, were joined as defendants, they having been mentioned in and to participate in the award made by said board. Said parties, as defendants in the court below, filed an answer and cross-action presenting the usual allegations as to formal matters in a compensation suit, and sought recovery in behalf of appellee McGee for compensation at the rate of $12.46 per week for a period of 401 weeks, alleging that said McGee had been totally and permanently disabled by virtue of the injuries claimed to have been sustained by him on or about June 13, 1929, while working in Dallas county, Tex., for Wyatt Metal & Boiler Works while he was attempting to lift a heavy piece of steel, whereby he accidentally strained and otherwise injured certain tendons, ligaments, muscles, etc., in his neck, shoulders, and arms. There were the usual allegations of employment of attorney with the agreement to pay the one-third of the recovery, and of the hardships that would. result if a lump sum settlement therefor was denied.

Appellant's answer consisted of a general demurrer, special exceptions, a general denial, and the following special denial: "* * * That if the defendant was injured at all, which is not admitted but is denied, that his injuries were not general, but were specific and his injury consisted in nothing except a sprain or strain to the arm, if there was any such injury, and there was no injury sustained by the defendant that could in any way cause total and permanent injury. * * * "

In response to the special issue submitted, the jury found that appellee sustained accidental injuries on the occasion alleged; that he was totally incapacitated by result of such injuries; that same was not permanent and would continue for 200 weeks; that no partial incapacity would result; that hardship would result if compensation was not paid in a lump sum.

The trial court upon this verdict rendered judgment in favor of appellee McGee against appellant for $969.50, weekly compensation that matured for a period of 75 weeks from date of injury until date of trial, and for the further sum of $12.46 per week for a period of 125 weeks as compensation subsequent to November 27, 1930. By due and comprehensive proceedings, said cause was presented to this court for review.

Appellant by propositions Nos. 1, 2, 3, and 5 contended that the findings of the jury above set out were clearly contrary to the overwhelming preponderance of the evidence, and therefore the verdict should be set aside. A careful examination of all the evidence, with due effect given thereto, apparently sustains said propositions. However, we are required to determine the sufficiency of the evidence to sustain said findings from the evidence before the jury supporting same, and, in considering the testimony of the witnesses, we are denied passing upon their credibility, as that is a prerogative that rests exclusively with the jury, appellate courts being confined to consider alone the probative effect of the evidence; this perhaps includes the right to determine the facts established by the evidence. Therefore, inasmuch as there was introduced evidence which, if believed by the jury to be true, was sufficient, upon which the findings made could be based, we are required to overrule said propositions. This holding is by no means to indicate that this court, as an original proposition presented for its determination, would have reached the same conclusion, from all of the evidence introduced, as that reached by the jury. We are only applying and abiding by the rules of law that govern appellate courts in passing upon and determining questions of this character.

Appellant, by its fourth proposition, contends that the trial court erred in excluding "from the evidence a written statement made by Howard Rollison on October 7, 1929, in which said witness stated that appellee McGee never sustained any accidental injuries while working for Wyatt Metal & Boiler Works, as claimed by him, on the ground, that said witness denied making said statement after sixteen admitted genuine signatures of said witness had been introduced in evidence, which the jury had a right to compare with the signature on said statement, claimed to have been made by said Rollison." Witness Rollison admitted

as genuine his signatures indorsing seven different checks as being genuine, and nine signatures written by him on a piece of paper in the presence of the jury, which were admitted in evidence. Said witness testified that appellee McGee sustained injuries as alleged by him while working for Wyatt Metal & Boiler Works on June 13, 1929. Said statement was offered in evidence as bearing upon the credibility of said witness, and was excluded solely upon the ground that Rollison testified that he did not make it. We think this was error. Rollison was the only witness corroborating appellee McGee; that he (McGee) had sustained the injuries alleged by him at the time and on the occasion involved, and in the manner alleged; hence said statement was offered in evidence for the purpose of discrediting Rollison on a very material issue. Therefore, the sixteen admitted signatures and the manner in which Rollison testified, both as to corroborating McGee and in reference to whether or not he made the statement excluded, presented an issue for the jury to pass upon, viz., whether or not the signature on the excluded statement was that of said Rollison. The prerogative of the jury to reach a conclusion upon this question by an examination and comparison of the admitted signatures of said Rollison, with the disputed signature to the excluded statement, was to be exercised, although the jury was not aided by expert testimony based upon said signatures; this because expert testimony could only have furnished additional aid to the jury in determining the issue as to whether or not the disputed signature was that of said Rollison. Kennedy v. Upshaw, 64 Tex. 411; Barnes v. Barnes (Tex. Civ. App.) 261 S. W. 485; Kveton v. Keding et al. (Tex. Civ. App.) 286 S. W. 673; Latham v. Jordan (Tex. Com. App.) 17 S.W.(2d) 805. Said proposition is therefore sustained.

██ Appellant complains of the action of the trial court in sustaining objections to and excluding the following testimony of its witness, Dr. J. H. Marshall: "Now if the brachia plexus had been injured or paralyzed, and the nerve suspended on one side, he would have a flaccid paralysis. After you have a flaccid paralysis there would be no pain and no sensation, and no power, couldn't move it, couldn't feel it, and of course if you had the definite thing you would get some sluffing of the tissues, because when the nerve supply is gone the tissue perishes. On the other hand, coming right back, he would have this sub-static contraction of the arm with definite pain, all in there, so that would be comparable to connecting up your wires again. It would be impossible, we know that. You don't get a condition of that kind once and then get another condition in another case, because it shows that the nerves are intact and that he would

not have a flaccid paralysis one minute and a spasm or contraction or pain the next minute," on the ground that same was argumentative. This ruling we think was material error. Missouri, K. & T. Railway Co. v. Criswell, 34 Tex. Civ. App. 278, 78 S. W. 388; St. Louis Southwestern Railway Co. v. Taylor, 58 Tex. Civ. App. 139, 123 S. W. 714; St. Louis, S. F. & T. Railway Co. v. Overturf (Tex. Civ. App.) 163 S. W. 639. However, this error would not of itself justify a reversal of the judgment; this because the identical evidence contained in the bill of exception appears in the statement of facts, from which we must assume that, as a matter of fact, said testimony was not excluded from, but remained before, the jury. The ruling sustaining appellee's objection was not followed by a motion to withdraw said evidence from the jury.

Appellant's propositions Nos. 10, 11, 12, and 13 present as error the refusal of the trial court to submit, respectively, in connection with the following special issues given to the jury, an appropriate charge on the burden of proof, viz.:

"No. 1: Do you find from a preponderance of the evidence that the defendant, F. F. McGee, sustained accidental injuries on June 13, 1929?"

"No. 2: Do you find from a preponderance of the evidence that the injuries, if any, sustained by the defendant, F. F. McGee, on June 13, 1929, were sustained by him while an employee of Wyatt Metal & Boiler Works?

"No. 3: Do you find from a preponderance of the evidence that the defendant, F. F. McGee, sustained such injuries, if any, in the course of his employment, as an employee of Wyatt Metal & Boiler Works?

"No. 4. Do you find from a preponderance of the evidence that the defendant, F. F. McGee, sustained total incapacity as a natural result of injuries, if any, sustained by him while an employee of Wyatt Metal & Boiler Works, in the due course of his employment as such?"

██ The objection to said issues, respectively, being that the court failed to define burden of proof, and did not tell the jury that the burden was upon appellee McGee to establish the affirmative of said issues, and, as a part of each objection to the manner and form in which said issues were submitted, moved the court to properly instruct the jury that the burden of proof was upon said appellee to establish the affirmative of said special issues. From the holding in the following cases, we have been of the opinion that the rule in reference to charging on the burden of proof in cases submitted on special issues prohibited instructing the jury that the burden of proof was upon either party to a suit to establish the affirmative or negative an-

swers to the issues submitted [Houston & T. C. Ry. Co. v. Stribling (Tex. Civ. App.) 293 S. W. 890; Texas Indemnity Ins. Co. v. Allison (Tex. Civ. App.) 31 S.W.(2d) 319; Texas & Pacific Ry. Co. v. Bufkin (Tex. Civ. App.) 19 S.W.(2d) 343; Ford v. Couch (Tex. Civ. App.) 16 S.W.(2d) 869; Stevenson v. H. & T. C. Ry. Co. (Tex. Civ. App.) 19 S.W.(2d) 207; Texas Employers' Ins. Ass'n v. Adcock (Tex. Civ. App.) 27 S.W.(2d) 363], and that it was sufficient to instruct the jury, in reference to the burden of proof, as follows: "You will answer special issues submitted from the preponderance of the evidence, that is, the greater degree and weight of credible testimony before you." However, as indicated by the following observation made in the case of Houston & T. C. Ry. Co. v. Stevenson (Tex. Com. App.) 29 S.W.(2d) 995, 999, viz.: "Since this case will be reversed and remanded, we think it proper to state that, when plaintiff pleads and relies for recovery upon specific acts of negligence on the part of the defendant, and the case is submitted to the jury upon special issues, it is proper to instruct the jury as to those acts of negligence so charged and relied upon that the burden is upon the plaintiff to establish them by a preponderance of the evidence. When the defendant challenges the right of plaintiff to recover by reason of certain exceptions, and that by virtue of certain exceptions there is no liability on the part of the defendant, and special issues based upon such exceptions are submitted to the jury upon such special issues, it is proper to instruct the jury that the burden is upon the defendant to establish them by a preponderance of the evidence," it is apparent that the views of the Supreme Court are in harmony with appellant's propositions under review. In the following cases there are expressions that apparently support the pronouncement made in the Stevenson Case; Nobles v. Texas Indemnity Co. (Tex. Com. App.) 12 S.W.(2d) 199; Petroleum Casualty Co. v. Bristow (Tex. Civ. App.) 21 S.W. (2d) 9; Texas Employers' Ins. Ass'n v. Stephens (Tex. Civ. App.) 22 S.W.(2d) 144; [for opinion by Tex. Civ. App. in the Stevenson Case, see 19 S.W.(2d) 207]; Morgan v. Maunders (Tex. Civ. App.) 37 S.W.(2d) 791, 793. Therefore, we think it well that trial courts observe the rule as stated in the Stevenson Case.

▓▓▓▓ Appellant, by its fourteenth proposition, presents as material error the refusal to give the following special issue:

"Do you find that the permanent incapacity, if any, which the defendant McGee will sustain will be directly attributable to causes independent of the alleged injuries of June 13, 1929?

"You are hereby instructed that the burden of proof is upon the defendant, F. F. McGee, to establish the negative of the forego-ing issue by a preponderance of the evidence."

The following witnesses testified in reference to the condition of appellee's health during a period of two to six years prior to his alleged injuries as follows: "Mrs. N. M. Hunt testified: He worked for me about seven years ago. He worked for me several months that time * · * *. Later on he worked about six or seven months. We had to let him go again. I have seen him have spells while he was working for me. I noticed him jerking; he was frothing at the mouth and his arms were jerking; that is the way; * * * his face was red and back against his body, and possibly fifteen minutes under the influence of the 'jerk attack' and he was really jerking so that we could hardly hold his arms. * * * They were more frequent the last time he worked for us. I suppose in the several months he worked for us, he had maybe five or six spells. They became so frequent we could not depend on him to milk so we had to let him go."

R. A. Rich testified that McGee was a laborer under him between 30 and 60 days; that he had some kind of spells during that time; recalled two of them; he got shakey and gave down; he was under the influence of that spell for something like 30 minutes.

Ellison King testified: "I have known Mr. F. F. McGee since 1926. I have known of Mr. McGee having fits. I have known him to have them five or six times."

Ira King testified: "I have known him about six years. I was with him when he had a spell. I have been with him three times. He had the first fit * * * he just sat down and, commenced to shake, and told me to stick a glove in his mouth to keep his jaws from locking and he sat there for, I guess, about an hour and then he got better. We gave him water and washed his face and rubbed his palms and fingers and kept his arms spread out to keep them from drawing up. * * * His eyes were set in his head, He just slobbered; he couldn't open his mouth; I stuck a glove in there to keep his jaws from locking."

Witness described the second spell as having occurred at Duncanville, stating that it was not a very hard one. The third one was at Hale Station and was a little bit lighter than the second one.

Dr. J. H. Marshall testified in reference to the effect produced by epilepsy (fits) as follows: "If I had a history of a man over a period of 3 or 4 years possibly 7 years, when he had those fits and he went blind and had his head thrown back and his hands trembled and his arms came up in a spasmodic way and his legs drew up and he got down flat and had to be supported and then he sat down and laid down and that lasted over a period of 15 or 20 minutes and he would froth at the

mouth and they had to put a spoon in his mouth to keep him from biting his tongue, I would say that he had epilepsy. This flaccid condition where his hands were drawn up could be called a symptom of epilepsy. He could have a chain of symptoms, brain lesion, due to epilepsy, because it is a brain condition."

Dr. Richard M. Smith testified as follows: "Epilepsy indicates disturbance of the nervous condition. If a man has had over a period of 7, 8 or 10 years faints, or fits, where he suddenly begins to contract his head and chew his tongue and his arms and legs begin to contract and jerk, and he falls and collapses, and froths at the mouth, and that condition existed for a period of from 15 to 30 minutes, I would judge from his history that that was a condition of existing epilepsy. The serious form of to differentiate it from the petitmal form of epilepsy where they don't fall, or lose consciousness. Epilepsy always develops an unstable nervous system. It also goes to conditions, that—later in life—often develop what we call epileptic dementia— mental disease from continued existence of epilepsy. * * * As a Neurologist I formed an opinion as to what was wrong with this man. I consider this man has a condition which we call major hysteria."

Dr. Howard Dupuy testified as follows: "In my examination I could see no evidence of injury whatever as he spoke of—any injury that had torn his shoulder, nor could I find any evidence that I could see of any injury. I did not test the reflexes in that examination. * * * My conclusions were that his symptoms were not symptoms that logically result from any injury that I knew of, or could conceive of, about his shoulder."

To the same effect, Dr. W. C. Brown, Dr. J. H. Marshall, and Dr. Richard M. Smith testified.

Appellee alleged a cause of action under the requirements of the Workmen's Compensation Law, title 130, R. S. 1925, and necessarily had to allege his employment, that he was injured while in the performance of his duties, that his disability resulted therefrom, etc. Appellant's general denial and special denial put in issue every material allegation upon which the burden of proof rested upon appellee Mc-Gee, and it was permissible, under the state of pleadings, as above stated, for appellant to introduce evidence to show that the injuries alleged to have been sustained by appellee McGee, which were claimed to have produced his disability, were not the result of any accidental injuries received, as alleged, but were due to a nervous disorder from which he had been suffering for a period of years prior to his alleged accident; therefore appellant had the right to have submitted the issue as to whether or not McGee's disability, if any, was directly attributable to causes independent of his alleged injury.

Over proper objections made thereto by appellant, Mr. John White, of counsel for appellee, in making the closing argument in the case to the jury, was permitted by the trial court to say: "Who are the parties here? The Commercial Standard Insurance Company is the plaintiff and we are the defendants * * * they appealed this law suit * * * I never said anything about the award of the Board, I said that they appealed it, they brought us in, they brought us there, and they are the ones that are the cause of us being here."

Said remarks could have no legitimate place in the argument of counsel upon the issues presented to the jury for their determination, and could only apply and have reference to the fact that an award favorable to appellee had been made by the Industrial Accident Board, from which an appeal had been prosecuted by appellant. The following provisions of article 8307, § 5, R. S. 1925, viz.: "Any interested party who is not willing and does not consent to abide by the final ruling and decision of said board * * * (may) bring suit to set aside said final ruling * * * and the court shall in either event determine the issues in such cause instead of the board upon trial de novo and the burden of proof shall be upon the party claiming compensation," not only forbids proceedings had before the board from being used as evidence before the jury, but any reference thereto in discussing the case before that body; this for the wholesome purpose of preventing a jury, trying a cause, from being in anywise influenced by the action of the board in the case. The final award made by the board is only admissible in evidence to be considered by the judge trying the case in determining the question of jurisdiction of the court; that is, whether its jurisdiction had been properly invoked. Fidelity Union Casualty Co. v. Cary (Tex. Com. App.) 25 S.W. (2d) 302; article 8307, § 5, supra; Texas Employers' Ass'n v. Downing (Tex. Civ. App.) 218 S.W. 112. That the remarks of counsel under review were improperly made and calculated to cause the jurors to believe that the board had found in favor of appellee, and thereby influenced, at least in some degree, the jury to find in favor of appellee, we do not think can be seriously doubted, but to the contrary, the natural conclusion is that such was the effect of said remarks.

Propositions Nos. 17, 18, 19, 20, 21, and 22 relate to and challenge as being improper certain language used by Mr. H. J. Yarborough, one of appellee's attorneys, as being improper argument made in the opening presentation of the cause to the jury. Likewise, propositions Nos. 23, 25, 26, 27, 28, 29, 30, and 31 challenge certain statements made by Mr. John White, one of appellee's attorneys, in his closing argument. That the language used by said attorneys, respectively, and objected to was

improper and perhaps prejudicial, and calculated to unduly divert the jury from the proper consideration of the real merits of the issues submitted, we believe is apparent on the face of the arguments of said counsel thus subjected to review. However, in view of the fact that the cause will have to be reversed on other grounds, we assume that it will only be necessary to prevent a repetition thereof to admonish appellee's attorneys to observe, on a retrial of this cause, the rules governing the discussion of a cause before a jury, as reviewed in Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.) 26 S.W.(2d) 435. In conclusion, we feel constrained to say, although deprecating the necessity that demands the reversal of any cause, this for the reason that the delay thereby caused generally works a hardship on the litigant that should prevail, and increases the burdensome cost of litigation borne respectively by taxpayers and the litigants, nevertheless, so long as the trial of a cause is not so conducted as to secure a just and impartial legal trial, this court must of a necessity continue to discharge the duties enjoined upon appellate courts; viz., to review a cause for and correct all material errors that may be presented by the record, whereby such a trial as designed by the law to be had was denied. Because of the material errors above pointed out, the judgment of the trial court is reversed, and cause remanded.

Reversed and remanded.