## EAGLE STAR & BRITISH DOMINIONS INS. CO. OF LONDON, ENGLAND, et al. v. HEAD et al.

### No. 3750.

Court of Civil Appeals of Texas. Amarillo.

March 2, 1932.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for plaintiff in error Republic Ins. Co. of Highland Park.

E. G. Senter, of Dallas, Henry D. Meyers, of Borger, and Lackey & Lackey, of Stinnett, for other plaintiffs in error.

Calhoun & Thompson, of Amarillo, and Jos. H. Aynesworth, of Borger, for defendants in error.

JACKSON, J.

The plaintiff, Jones W. Head, instituted seven separate suits in the district court of Hutchinson county, Tex., making a different corporate fire insurance company defendant in each suit. He alleged in his petition in each suit that the defendant therein had, for a valuable consideration, issued to the plaintiff the policy sued on.

In cause No. 1795, Jones W. Head v. The Eagle Star & British Dominions Ins. Co., Limited, of London, England, the plaintiff sought to recover $2,000 on a fire insurance policy, dated March 8, 1930, expiring one year after date, issued to him by the defendant covering direct loss and damage by fire on a two-story brick building located on lots 1 and 2 in block 44 in the city of Borger, Hutchinson county, Tex.

In cause No. 1797, Jones W. Head v. St.

Paul Fire & Marine Insurance Co. of Minn., the plaintiff sought to recover $3,000 on a fire insurance policy covering the same period of time and the same building above alleged, issued to him by the defendant, against direct loss and damage by fire.

In cause No. 1801, Jones W. Head v. National Union Fire Insurance Company of Pittsburg, Pa., the plaintiff sought to recover $5,000 on a fire insurance policy dated March 7, 1930, expiring one year after date, issued to him by the defendant, covering loss and damage by fire on the same property.

In each of said petitions the plaintiff alleged that on or about the 20th day of May, 1930, fire damaged said building in excess of $13,000; that the value of said building was in excess of $20,000; that by the terms and conditions of each policy he was permitted to carry additional insurance on the building; that he furnished proof of loss to each of the defendants, as required, and he attaches to his petition in each case, and makes a part thereof, a copy of the insurance policy sued on.

In cause No. 1796, Jones W. Head v. Republic Fire Insurance Company of America, Pittsburg, Pa., the plaintiff sued to recover $1,000 on a fire insurance policy dated March 8, 1930, and expiring one year after date, issued to him by the defendant, covering loss and damage by fire to the furniture, fixtures, equipment, supplies, and other personal property usual and incident to the hospital or clinic, located in said two-story brick building.

In cause No. 1799, Jones W. Head v. The Republic Insurance Company of Highland Park, Dallas county, Tex., the plaintiff sued to recover $2,500 on a fire insurance policy dated April 27, 1930, and expiring one year after date, issued to him by the defendant, covering direct loss and damage by fire upon the same fixtures, supplies, machinery, equipment, etc., located in said two-story brick building.

In cause No. 1800, J. W. Head v. United States Fire Insurance Company of New York, the plaintiff sought to recover $1,500 on a fire insurance policy dated March 26, 1930, expiring three years after date, issued to him by the defendant, covering direct loss and damage by fire on the same office furniture, fixtures, supplies, machinery, etc., contained in said two-story brick building.

The plaintiff, in his petition in each of the last three numbered suits, describes in detail the same furniture, fixtures, equipment, and supplies covered by each policy, and alleges that, by the fire of May 20, 1930, said furniture, equipment, etc., was damaged in excess of $7,000. That by the terms and conditions of each of the policies covering the contents of the building he was permitted to carry addi-tional insurance. That he furnished proof of loss to each of the defendants, as required, and attaches to his petition in each cause, and makes a part thereof, a copy of the policy sued on.

In cause No. 1798, Jones W. Head v. St. Paul Fire & Marine Insurance Company of St. Paul, Minn., the plaintiff sued to recover $1,000 on a fire insurance policy dated May 12, 1930, expiring one year after date, issued to him by the defendant covering direct loss or damage by fire to one X-ray machine and one diathermy while situated in said two-story brick building. He alleges that in the fire of May 20, 1930, said X-ray machine was damaged in excess of the sum of $1350, and that said machine was of the fair and reasonable value of said sum. That he gave notice of the loss, etc., and the defendant is justly indebted to him in the sum of $1,000. He attaches to his petition and makes a part thereof a copy of the policy sued on.

J. M. Collins was permitted to intervene in causes Nos. 1795, 1797, and 1801. The intervener alleged that on or about April 15, 1930, Jones W. Head made, executed, and delivered to intervener two notes aggregating the sum of $2,250, payable April 15, 1931, and May 28, 1931, respectively, and contemporaneously therewith executed a deed of trust on lots 1 and 2 in block 44 of the city of Borger and the improvements thereon to secure the payment of said notes and interest. That attached to the policies involved in causes Nos. 1795, 1797, and 1801 was a loss payable clause in favor of intervener making all loss under the policies payable to him as his interest might appear. He asked for judgment against the defendants in said causes in accordance with the terms of the loss payable clause in said policies, and prayed for a judgment for his debt against Jones W. Head and a foreclosure of his deed of trust lien on lots 1 and 2 in block 44.

The Borger State Bank intervened, alleging that the plaintiff, Jones W. Head, was indebted to it in the sum of $1,250, with interest thereon, and had by an instrument in writing, for a valuable consideration, transferred and assigned to such intervener all of his right, title, interest, and estate in and to the policies involved in causes Nos. 1799 and 1800, and asked that the moneys recovered on said policies, to the extent of the intervener's debt, be adjudged to it.

In cause No. 1795, Jones W. Head v. Eagle Star & British Dominions Insurance Company of London, England, the defendant, after its plea in abatement, answered by general demurrer, general denial, and set up a provision of its policy providing that: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance on the subject thereof, or if the interest of the insured in

the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after loss. This entire policy, unless otherwise provided by agreement endorsed hereon added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; or if the hazard be increased by any means within the control or knowledge of the insured; or if mechanics be employed in building, altering or repairing the within described premises for more than fifteen days at any one time; or if the interest of the insured in the property be other than unconditional and sole ownership; or if the subject of the insurance be a building on ground not owned by the insured in fee simple; or if any change other than by the death of an insured take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise."

The defendant alleges that the insured willfully concealed the fact that he was engaged in a violent controversy with other persons at the time the insurance was issued, who were threatening to do him injury; that other parties were interested in the property; that after the issuance of the policy the insured procured other insurance without the knowledge of the defendant; that the hazard was increased; that the interest of the insured was other than unconditional; that a change took place in the interest, title, and possession of the property; that mechanics were employed in building, altering, and repairing the premises for more than fifteen days immediately preceding the fire; that after the fire the insured presented a claim of loss largely in excess of the damages to the property, and thereby attempted willfully and fraudulently to collect insurance on the property not covered by the policy; that the former wife of plaintiff, Irene Head, is and was at the time of the issuance of the policy an owner of a one-half interest in the property insured; that the fire occurred under circumstances making the insured responsible therefor; that it was caused by his gross negligence; that the property was willfully burned with intent to commit fraud, and that each and all of the stipulations in the above-quoted provisions of the policy were breached and the policy forfeited thereby.

In cause No. 1797, Jones W. Head v. St. Paul Fire & Marine Insurance Company of Minnesota, and in cause No. 1801, Jones W. Head v. National Union Fire Insurance Company of Pittsburg, Pa., the defendant in each suit answered, setting up the same defenses urged by the defendant in cause No. 1795.

In cause No. 1796, Jones W. Head v. The Republic Fire Insurance Company of America, in addition to the matters urged as a defense by each of the defendants in causes Nos. 1795, 1797, and 1801, the defendant pleaded the provision of its policy limiting its liability to not exceeding three-fourths of the actual cash value of the property insured in the policy, and that, in any event, the liability of the defendant should be prorated with any other policy or policies that had been issued to the plaintiff. It also urged the provision of its policy stipulating, in effect, that, in the event of a fire, the insured should protect the property from further damage, separate the damaged and undamaged property, put it in the best possible order, make a complete inventory thereof, and state the quantity and cost of each article and the amount claimed thereon, and that the insured wholly failed to comply with this provision of the policy, alleging the particulars in which this stipulation was breached.

In cause No. 1799, Jones W. Head v. Republic Insurance Company of Highland Park, in addition to the defensive matters set out above, the defendant in this cause denied liability to the intervener, the Borger State Bank, and urged all the defenses against intervener that were pleaded against the plaintiff, Jones W. Head.

In cause No. 1800, Jones W. Head v. United States Fire Insurance Company of New York, the defendant's answer contains the same defenses urged by the defendant in cause No. 1799.

In cause No. 1798, Jones W. Head v. St. Paul Fire & Marine Insurance Company of Minneapolis, the defendant, in addition to the defenses alleged in cause No. 1795, pleaded the provision of its policy to the effect that the insured should protect the property in case of fire from further damage, separate the damaged from the undamaged, make a complete inventory, etc.

At the time the cases were reached for trial on the pleadings of the plaintiff, the interveners, and the defendants, as hereinbefore indicated, the plaintiff moved the court to consolidate all the cases. The court granted this motion, entered his order consolidating the cases, and proceeded as if there were but one case. None of the parties were required to replead, and the case was tried on the seven petitions of the plaintiff, the two petitions of the interveners, and the separate answers of each defendant in each cause.

In response to special issues submitted by the court, the jury found, in substance, that it would cost $15,245.83 to repair and replace the building burned on May 20, 1930; that on the same date the reasonable cash market value of the personal property contained in the two-story brick building, exclusive of the X-ray and diathermy, just prior to the fire

was the sum of $9,229.17, and that subsequent to the fire the value thereof was $2,483.33; that the reasonable cash market value of the X-ray and diathermy prior to the fire was $1,308.33 and their value just after the fire was $150; that the defendants, at the time of the issuance of their respective policies, knew that J. W. Head was not the owner of the mineral rights under lots 1 and 2 in block 44; that the defendant St. Paul Fire & Marine Insurance Company consented to the writing of its policy for the sum of $1,000, covering the X-ray and diathermy while it was situated in the two-story brick building; that the plaintiff is indebted to intervener Collins in the principal sum of $2,250, with interest thereon from December 1, 1930, and that such indebtedness was secured by deed of trust lien; that the amount of concurrent insurance permitted by the defendant United States Fire Insurance Company was $5,000; that the value of the building just before the fire was $19,000, and, just after the fire, $3,754.17; that the policy issued by the National Union Fire Insurance Company at the time of the fire had a loss payable clause in favor of J. M. Collins.

On these findings the court entered judgment that the plaintiff recover of the Eagle Star & British Dominions Insurance Company of London, England, $2,000 and interest thereon at 6 per cent. per annum from the 20th day of October, 1930; that he recover of the Republic Fire Insurance Company of America $1,000, with interest at 6 per cent. from the same date; that he recover from the St. Paul Fire & Marine Insurance Company of Minnesota $3,000, with interest at 6 per cent. from the same date; that he recover from the St. Paul Fire & Marine Insurance Co. of St. Paul, Minn., the sum of $868.74, with interest at 6 per cent. from the same date; that he recover from the Republic Insurance Company of Highland Park $2,500, with interest at 6 per cent. from the same date; that he recover from the United States Fire Insurance Company of New York the sum of $1,500, with interest at 6 per cent. per annum from the same date; that he recover of the National Union Fire Insurance Company of Pittsburg, $5,000, with interest at the rate of 6 per cent. per annum from the same date; that the intervener Borger State Bank have judgment against Jones W. Head for the sum of $1,250, with interest from October 12, 1930; that Jones W. Head had transferred and assigned to said intervener the policy issued by the United States Fire Insurance Company of New York to secure the payment of said sum of money, and that said intervener recover from said Fire Insurance Company of New York the sum of $1,250, with interest; that, upon the payment thereof by said United States Fire Insurance Company, Jones W. Head should receive credit for said sum, and the balance

owed by said defendant on its policy should be paid to the plaintiff; that the intervener J. M. Collins recover of the plaintiff $2,250, with interest from the 1st day of December, 1930; that the intervener's lien be foreclosed against lots 1 and 2 in block 44, and the property sold as under execution to satisfy intervener's judgment; that J. M. Collins have and recover of and from the defendants Eagle Star & British Dominions Insurance Company of London, England, the St. Paul Fire & Marine Insurance Company of Minnesota, and the National Union Fire Insurance Company of Pittsburg, jointly and severally, the sum due intervener by plaintiff, Head, not to exceed against any one of the defendants the amount of judgment rendered against it in favor of plaintiff, Head, and any balance, after the payment of said judgment, owing by the defendants, should be paid to the plaintiff. That the plaintiff recover from each defendant all the cost incurred in the case in which it was sued, and that the interveners recover their cost against the defendant against whom they recovered judgment.

From this judgment the defendants, hereinafter called appellants, by writ of error, prosecute an appeal, each filing its separate supersedeas bond.

The brief filed in this court for appellants is in four typewritten copies on thin paper. Neither copy contains any of the original sheets. Each copy of the brief has 242 carbon copy pages. The color of the type on some of the pages is black, on others blue, and on others green, all arranged indiscriminately without reference to the color scheme. We find no citation to any statute, text-book, or decision. The only authority we find in the brief is the verbose obscurity of the writer.

The attorneys for appellant Republic Insurance Company of Highland Park have selected from this voluminous brief certain assignments which they present in a concise written argument, giving the proposition, a sufficient statement, and citing and quoting from the authorities on which they rely to support their contention. This argument has been of material assistance to the court in considering the fifty-one assignments urged in the prolix and unsatisfactory brief of appellants.

The appellants present as error the action of the trial court in refusing to sustain their exception and objection to the argument of the attorney for appellee, and in refusing to instruct the jury not to consider the remarks of said attorney in his argument.

█ As shown by the bills of exceptions, appellants objected to the statements of appellee's attorney to the effect that appellants had brought a little "dish-faced monkey" into court and put him on the stand; that

he was the only witness brought before them to prove that appellee had burned the building, to prove that he was a perjurer, liar, and false swearer, and asking, if they were going to stand for insurance companies taking a man's hard-earned cash and, when a fire occurs, charge him with being a criminal, guilty of perjury and false swearing, and come into court and get by with it. That appellants in every way possible had tried to libel and slander the appellee, accusing him of arson, forgery, false swearing, but offered no proof thereof. That such was their tactics, to beat him down, deny their contracts like the Imperial Government of Germany, treat him as a scrap of paper, bring him into court, cross-examine him, flim-flam him, and pull the wool over your eyes and send appellee out without a dollar, make him pay the expense of contractors, let him know that the insurance companies "is cock of the walk." Consider all the conversations had with adjusters, the examination that Senator Senter gave appellee in July, all the testimony that they had heard, go out and read the vicious answers filed in this case, supported by no testimony, and then deal with Dr. Head and the insurance companies just like you would deal if you were in Dr. Head's place, charged with everything in the world and backed up by no testimony.

Each of the appellants in its answer alleged that the appellee had fraudulently tried to collect excess damages, tried to collect on property not covered by the policies, and that the property was willfully burned. Such allegations, made in bad faith, would afford considerable provocation for attacking the bona fides of appellants in an argument, but it appears from the remarks of the attorney in his speech that some efforts had been made to prove that some part of the allegations, at least, were true. After attacking the veracity of appellants' witness and charging him with the appearance of a "dish-faced monkey," and the only witness produced to testify to any of the charges; rehearsing the allegations in appellants' answers averring fraud, arson, etc., and immediately asking the jury to put themselves in the place of appellee and deal with the appellants just like they would if in appellee's place, could not be excused under the rule of provocation, and in our opinion constituted error. Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.) 26 S.W.(2d) 435; Nicholson et ux. v. Nicholson (Tex. Civ. App.) 22 S.W.(2d) 514; Orchin et al. v. Ft. Worth Poultry & Egg Co. et al. (Tex. Civ. App.) 43 S.W.(2d) 308; Crow v. Monroe et ux. (Tex. Civ. App.) 273 S. W. 886; Davis, Agent, v. Hill et al. (Tex. Civ. App.) 271 S. W. 281; Robbins et al. v. Wynne (Tex. Com. App.) 44 S.W.(2d) 946.

The appellants assign as error the action of the trial court in failing and refusing, in his main charge, to instruct the jury on the burden of proof, and in failing and refusing to give any of appellants' special requested charges in connection with each issue submitted, that the burden of proof was on appellee to make out such issue by a preponderance of the evidence.

■ The court, in the first paragraph of his charge, instructed the jury that the case would be submitted on special issues and questions, "which you will answer from a preponderance of the evidence, that is, from the greater degree and weight of the credible testimony before you, without reference to the effect that your answers may have upon the judgment that might be rendered in this case." He began each issue submitted by asking, "What do you find from the evidence?" as to the facts relative to the issue submitted. He nowhere advises the jury as to the burden of proof, nor does he use the language "from a preponderance of the evidence" in any of the issues submitted. This defect in the charge was called to the court's attention by objection thereto, and also by the requested special charges on the burden of proof asked by appellants and refused by the court.

"When plaintiff pleads and relies for recovery upon specific acts of negligence on the part of the defendant, and the case is submitted to the jury upon special issues, it is proper to instruct the jury as to those acts of negligence so charged and relied upon that the burden is upon the plaintiff to establish them by a preponderance of the evidence." Houston & T. C. Ry. Co. v. Stevenson, 29 S. W. (2d) 995, 999. Opinion by the Commission of Appeals.

To the same effect is the holding in the following cases: Commercial Standard Insurance Co. v. McGee et al. (Tex. Civ. App.) 40 S.W.(2d) 1105; John Psimenos v. Mary Cordelia Huntley (Tex. Civ. App.) 47 S.W.(2d) 622, by Chief Justice Gallagher of the Waco Court; Smith v. Dallas Ry. Co. (Tex. Civ. App.) 8 S.W.(2d) 548; McWhorter v. Scales & Duvall (Tex. Civ. App.) 297 S. W. 894, 895; Sanger v. First National Bank of Amarillo (Tex. Civ. App.) 170 S. W. 1087.

The courts are not in entire harmony with reference to a proper charge on the burden of proof where a case is submitted on special issues, but the better authority seems to hold that, where objection is made to the charge for its failure to place the burden of proof, or special charges are requested correctly placing such burden, that to refuse to correctly direct the jury relative to the burden of proof is reversible error.

■ The appellants assail as error the action of the trial court in permitting the appellee to testify in his own behalf that, at the time the building was burned, the value of its contents was $13,000, exclusive of the X-ray and diathermy; that he had made a list of the

contents of the building after the fire and had a majority of the furniture appraised by a furniture man. That he himself placed the value on the surgical instruments as best he could. That, in arriving at such values, he based them largely on the catalogue prices. That some of the instruments he did not find in the catalogue. That he used several catalogues, but some of them did not have the instruments, the prices of which he was looking up, but that all the prices were, within his knowledge, a reasonable fair value of the items that he had valued.

The record fails to disclose whether the furniture man consulted was engaged in the sale of new furniture or secondhand furniture. The catalogue or catalogues from which the witness obtained information as to prices were not produced, the date thereof was not given, it is not disclosed whether they contained prices of new instruments or secondhand instruments; that such catalogues carried the usual and standard prices of such instruments, or that instruments listed therein were made out of the same material as those damaged in the fire. This testimony, under the facts revealed by this record, was inadmissible. Goldfrank et al. v. Halff et al. (Tex. Civ. App.) 26 S. W. 778; Halff et al. v. Goldfrank et al. (Tex. Civ. App.) 49 S. W. 1095; Galveston, H. & S. A. Ry. Co. v. Hillman (Tex. Civ. App.) 118 S. W. 158; Houston Packing Co. v. Griffith (Tex. Civ. App.) 164 S. W. 431; Texas & P. Ry. Co. v. Crowley (Tex. Civ. App.) 86 S. W. 342; Shelton v. Thomas (Tex. Civ. App.) 11 S.W.(2d) 254.

■ The appellants urge as error the action of the trial court in refusing to instruct the jury that it was the duty of appellee to protect the contents of the building from further damage after the fire, and that, if he failed to do so, and such failure caused additional damages, such additional damages were not recoverable.

These policies placed this duty upon appellee, and it is admitted, in effect, that he did not comply with such obligation. This assignment is sustained.

■ The appellants objected to the consolidation of these cases and present as error the action of the court in consolidating the seven cases and trying them as one. The court did not require the parties to replead and try the case under a separate number, but proceeded to the trial of all seven cases on the seven separate petitions of the appellee, the two petitions of the interveners, the seven separate answers of appellants to appellee's causes of action, and their answers to the interveners' claims. He submitted separate issues against each of the appellants, rendered separate judgments for the appellee against each appellant, for the interveners against the plaintiff and certain appellants, and foreclosed the lien of intervener Collins against the real estate upon which the building partially destroyed by fire was located. Three of the policies sued on covered the building and improvements, three of the policies covered all of the contents of the building, except the X-ray machine, which was covered by a different policy and upon which a separate suit was filed. The provisions of the policies covering the building differed in certain material respects from the provisions of the policies covering the contents of the building. The consolidation of cases rests largely in the judicial discretion of trial courts, but such discretion should not be exercised in an arbitrary or capricious manner, but should be governed by legal rules and principles. It is a general rule that suits may not be consolidated when they involve neither the same parties nor the same subject-matter, and the issues in one suit are foreign to the issues in the other, and, when suits are consolidated, the court should require the parties to replead. 1 Tex. Jur. 680–682.

■ In our opinion the court could have, in the exercise of sound discretion, consolidated into one case the three suits involving the policies covering the building, and could have consolidated into another case the suits covering the policies on the contents of the building and the X-ray machine; but the very act of consolidating so many cases, involving different parties, different causes of action, and different defenses, is calculated to defeat the purpose of the statute authorizing the consolidation of cases, which, in the main, is to avoid multiplicity of suits, the convenience of the parties to the cases involved, and a speedy disposition of the litigation. This action of the court in consolidating all these cases, in our opinion, tended to confuse the jury, delay a final disposition of the cases, and was calculated to injure and prejudice the rights of the parties.

The appellants pleaded that the appellee's former wife had a community interest in the property destroyed and damaged, and, unless the testimony on another trial is conclusive on this issue, it should be submitted to the jury.

Appellants' assignments urging as error the action of the trial court in excluding certain deposition testimony, because no commission had been issued, and in refusing to grant their motion for a continuance of the case, need not occur on another trial, and will therefore not be discussed.

The attorney filing the voluminous brief heretofore mentioned has, after our opinion was practically prepared, furnished us with a list of authorities to be considered in connection with said brief.

The judgment is reversed, and the cause is remanded.